ELIZABETH E. FLETCHER, ADMINISTRATRIX OF JAMES RALPH FLETCHER, DECEASED, v. SECURITY LIFE AND TRUST COMPANY.

(Filed 8 October, 1941.)

**1. Insurance § 38—**

> In construing double indemnity clauses in life policies, the terms "accidental death" and "death by external accidental means" are not synonymous, since the second term connotes not only that death be unforeseen and unexpected but also that the means motivating or causing death be unusual, unforeseen, and fortuitous.

**2. Same—**

A spinal anesthesia was administered insured preparatory to a gall bladder operation. The anesthetic affected the respiratory system and caused death. *Held:* Even though the death was accidental in that it was unforeseen and unexpected, the cause of death was the administration of the anesthetic, which was not accidental but was voluntarily authorized and intentionally given, and therefore the death was not caused by "external accidental means" within the terms of the policy in suit.

**3. Same—**

A spinal anesthesia was administered insured preparatory to a gall bladder operation. Shortly thereafter insured's respiratory system was adversely affected, and, in the excitement caused by the sudden emergency, insured's head was lowered although the proper treatment would have been to raise the head in such circumstances. *Held:* Even conceding that the lowering of the head was accidental and produced death, the act of lowering the head left no visible contusion or wound on the exterior part of insured's body, prescribed as a prerequisite to the recovery of double indemnity in the policy in suit.

APPEAL by plaintiff from *Phillips, J.,* at May Term, 1941, of YADKIN. Affirmed.

Civil action to recover under the double indemnity provision of a life insurance policy.

Plaintiff's deceased, while confined in a hospital for treatment for chronic inflammation of the gall bladder, agreed to submit to an operation therefor. A spinal anesthesia was administered. Shortly thereafter and before the operation was begun he complained of shortness of breath and his respiration became graduated and shallow. Notwithstanding the emergency efforts of the doctors his respiratory system became completely paralyzed or anesthetized and the patient died.

Spinal anesthesia is injected below the level of the site of the contemplated operation. The extent of its effect upward is due partly to gravity and partly to the force with which it is injected. Its upward rise is controlled largely by lowering or raising the patient's head. The further his head is lowered the more apt it is that the fluid will reach his respiratory system and brain center. There is evidence that after his respiratory system began to fail his head was lowered still further.

The injection of the spinal anesthesia was of the kind and under the circumstances in known and approved use in the medical profession and was given or administered in the usual and ordinary way. It was the usual and ordinary dose as to volume and as to amount, and the point at which injection was made in the spinal column was the point ordinarily used for injections. The force used was not unusual and the instruments used were the proper ones.

The provisions in the policy upon which suit was instituted is as follows:

"The company will pay the beneficiary double the face amount of this policy upon receipt of due proof that the death of the insured occurred, independently and exclusively of all other causes, from accidental drowning or as a direct result of bodily injuries effected through external, violent and accidental means, where there is a visible contusion or wound on the exterior part of the body."

At the close of the evidence for the plaintiff, the court, on motion of the defendant, dismissed the action and entered judgment as of nonsuit. Plaintiff excepted and appealed.

*W. M. Allen and Hoke F. Henderson for appellant.*
*Manly, Hendren & Womble and I. E. Carlyle for appellee.*

BARNHILL, J. Are the terms "accidental death" and "death by external accidental means" synonymous? Plaintiff's right to recover depends, in a large measure, upon the answer.

Upon this question there is a distinct cleavage of judicial opinion. Some courts hold that they are synonymous—others that they are not. With us it is not a novel question. This Court has already adopted the view that there is a distinct difference in the meaning of the two terms and that the coverage of the policy is materially affected by the use of the one or the other. *Scott v. Ins. Co.,* 208 N. C., 160, 179 S. E., 843; *Harris v. Ins. Co.,* 204 N. C., 385, 168 S. E., 208; *Mehaffey v. Ins. Co.,* 205 N. C., 701, 172 S. E., 331. This interpretation, we think, is supported by the better reasoning and is in accord with the weight of authority.

"Accidental" means that which happens by chance or fortuitously, without intent or design and which is unexpected, unusual and unforeseen. 29 Am. Jur., 706-7, sec. 931. "Accidental means" refers to the occurrence or happening which produces the result and not to the result. That is, "accidental" is descriptive of the term "means." The motivating, operative and causal factor must be accidental in the sense that it is unusual, unforeseen and unexpected. Under the majority view the emphasis is upon the accidental character of the causation—not upon the accidental nature of the ultimate sequence of the chain of causation.

The insurance is not against an accidental result. To create liability it must be made to appear that the unforeseen and unexpected result was produced by accidental means. The stipulated payment is to be made only if the death, though unforeseen and unexpected, was effected by means which are external, violent and accidental. *Harris v. Ins. Co., supra; Mehaffey v. Ins. Co., supra; Scott v. Ins. Co., supra; Ins. Co. v. Belch,* 100 Fed. (2d), 48 (overruling *Ins. Co. v. Dodge,* 11 Fed. [2d], 486, relied on by plaintiff); *Order of United Commercial Travel-*

ers v. Shane, 64 Fed. (2d), 55; Landress v. Ins. Co., 291 U. S., 491, 78 L. Ed., 934. See also 13 A. L. R., 662, 39 A. L. R., 83, 59 A. L. R., 1295; 29 Am. Jur., 708; Cornelius on Accidental Means, pp. 7 and 8.

If the death resulted from the use of ordinary means voluntarily employed in a not unusual or unexpected way it is not produced by accidental means. U. S. Mutual Accident Asso. v. Barry, 131 U. S., 100, 33 L. Ed., 60, Anno. 7 A. L. R., 1131. Hence, it has been held that unanticipated injuries or death resulting from the use of an anesthetic, Davis v. Ins. Co., 73 Fed. (2d), 330, or the administration of Butyn, Order of United Commercial Travelers v. Shane, supra, is not produced by accidental means.

In addition to the usual and expected sedative effect of the anesthetic injected into the spine of the deceased, there occurred an unexpected result due to the collapse of the respiratory system. If it be conceded that there was an accidental death caused by external means—the injection of the anesthetic—the fact still remains that the "means" was not accidental but was voluntarily authorized and was intentional. Davis v. Ins. Co., supra; 96 A. L. R., 599; U. S. Mutual Accident Asso. v. Barry, supra; 29 Am. Jur., 714.

But the plaintiff contends that she offered evidence tending to show that the head of the deceased was accidentally or unintentionally lowered after the anesthetic had begun to affect the respiratory system of the deceased and that the lowering of the head tended to further increase the risk and caused the death. She contends that this evidence brings her case within the provisions of the policy. This contention cannot be sustained. If we concede that this evidence tends to show "death by accidental means" no visible contusion or wound on the exterior part of the body was caused thereby. There is no causal connection between the wound made by the injection and such "death by accidental means." The wound was voluntarily made with the full consent of the deceased. Such death by accidental means arose out of circumstances which developed thereafter.

If the cause of the death of plaintiff's intestate is referred to the injection of the anesthetic, only an accidental death from an intentional act performed in the usual and ordinary way, with the full consent of the deceased, is established. The element of accidental means is absent. If we relate it to the accidental lowering of the patient's head in the excitement caused by the sudden emergency which arose when his respiratory system became affected, there was no exterior visible wound or contusion caused thereby. Hence, the judgment of the court below is in accord with the division of thought on the subject to which we adhere.

Affirmed.