RUTH E. SLAUGHTER v. STATE CAPITAL LIFE INSURANCE COMPANY.

(Filed 6 May, 1959.)

**1. Insurance § 46—**

In an action on a policy to recover for death by external, violent and accidental means, the burden is on plaintiff to prove not only that the death resulted through external and violent means, but also that it resulted from accidental means, so as to bring his claim within the coverage of the policy, and, upon a *prima facie* showing by plaintiff, the burden is on insurer to relieve itself of liability by showing that insured's death was caused directly or indirectly by the intentional act of insured or any other person within the exclusion clause of the policy.

**2. Same:    Insurance § 34—**

Plaintiff's evidence tending to show that insured was a taxicab operator, that he picked up a passenger, that several hours thereafter in-

sured was found at a lonely place with a pistol wound in his back and above his left ear, his money, his pistol and his taxicab gone, that tire marks near the body showed that a vehicle had spun its wheels as it left the scene, and that the cab was later found some 22 miles away, *is held* insufficient to show that the death was the result of an accident within the coverage of the policy and does show an intentional and not an accidental killing within the exclusion clause of the policy, and nonsuit was proper.

**3. Insurance § 46—**

Where plaintiff, in a suit on an accident policy, fails to make out a case of coverage, nonsuit is proper, and if plaintiff's evidence establishes a defense in that the death resulted from a cause within the exclusion clause of the policy, nonsuit is also proper; if insurer's evidence not in conflict with that of plaintiff shows that plaintiff does not have a case or that insurer does have a complete defense, insurer's remedy is by motion for a peremptory instruction.

APPEAL by plaintiff from *Mallard, J.,* November, 1958 Civil Term, JOHNSTON Superior Court.

Civil action by the plaintiff, beneficiary, to recover on a preferred accident policy issued by defendant in which it contracted to pay $2,500.00 for the loss of life by the insured, William B. Slaughter, "resulting directly and independently of all other causes from bodily injury sustained by the insured solely through external, violent, and accidental means." The policy contained an exclusion clause, in material part as follows: "The insurance under this policy shall not cover death . . . caused directly or indirectly, wholly or partly, (1) by the intentional act of the Insured or any other person, whether sane or insane . . ." The policy was in force at the time of the insured's death on April 5, 1956.

The evidence presented at the trial disclosed the following: The insured was 36 years old. He operated a taxicab in Selma. He had a permit to carry and was in the habit of carrying a pistol. Some time in the late afternoon or early evening of April 5, 1956, some unidentified man "asked him to take him to Smithfield and he said, 'O.K.'" At 9:15 that night the dead body of the insured was found "in a desolate place" at the city dump about three miles from Smithfield. The deceased was lying face down in a little ditch "that was 'piled' up by the road scraper." His left shoe was off. His belt was found four or five yards from his body. His money pouch, usually attached to his belt, was found nearby, empty. His pistol, money, and cab were gone. His watch and keys to his wife's car were in his pockets. His rings and pins were not taken. The insured had a pistol wound in the back under the right shoulder blade and another about one inch above his

left ear. A .38 calibre pistol bullet passed through the head and was recovered from the side opposite the point of entry. Tire marks near the dead man's body "took off" toward Highway 301, "spinning, . . . up dirt." The deceased's cab was found in a parking lot at Dunn, North Carolina, at about four o'clock on the morning of April 6. The distance between Selma and Smithfield is approximately three miles and between Smithfield and Dunn is approximately 22 miles.

The coroner made an investigation and report, though he did not impanel a jury or hold a formal inquest. The plaintiff offered the report, which was excluded on defendant's objection. The plaintiff excepted. The plaintiff signed and filed proof of claim which was prepared by the defendant's agent. The evidence was in conflict as to whether the plaintiff knew the contents of the claim relating to the cause of death.

At the close of the plaintiff's evidence, the trial judge entered judgment of compulsory nonsuit, from which the plaintiff appealed.

*Joseph H. Levinson, William I Godwin for plaintiff, appellant.*
*Allen & Hipp, Wellons & Wellons for defendant, appellee.*

HIGGINS, J. The plaintiff has abandoned all assignments of error except those relating to the judgment of nonsuit. The policy here involved provided coverage for death "resulting directly and independently of all other causes from bodily injury sustained by the insured solely through external, violent, and accidental means." In order to prevail in her suit on the policy, the plaintiff must bring the insured's death within the coverage provision. If coverage is established, the defendant may relieve itself of liability by showing the insured's death was caused "directly or indirectly, wholly or partly, by the intentional act of the insured or any other person, whether sane or insane." *Goldberg v. Ins. Co.,* 248 N.C. 86, 102 S.E. 2d 521; *Fallins v. Ins. Co.,* 247 N.C. 72, 100 S.E. 2d 214; *Patrick v. Ins. Co.,* 241 N.C. 614, 86 S.E. 2d 201; *Gorham v. Ins. Co.,* 214 N.C. 526, 200 S.E. 5; *Whitaker v. Ins. Co.,* 213 N.C. 376, 196 S.E. 328; *Warren v. Ins. Co.,* 212 N.C. 354, 193 S.E. 293; 215 N.C. 402, 2 S.E. 2d 17; 217 N.C. 705, 9 S.E. 2d 479; 219 N.C. 368, 13 S.E. 2d 609.

Unless the plaintiff's evidence in this case permits the legitimate inference that the insured met his death solely through external, violent, and accidental means, nonsuit is proper. It is not enough to show death by external means. It is not enough to show death by violent means. We think the proper rule requires the plaintiff to offer evidence sufficient to permit the inference that death was caused also by acci-

dental means. The plaintiff has recognized her responsibility in this particular by the following in her brief: "Thus, there is no question that the plaintiff in an action on an accidental policy must prove that the death for which the action was brought was caused by accidental means within the terms of the policy."

The evidence in this case may be deemed conclusive that the death of the insured resulted solely from external and violent means. The body was found in a lonely place at the city dump, within about three hours from the time he left Selma to carry a passenger to Smithfield. The insured had been shot in the back and above the left ear with a pistol. His money, his pistol, and his taxicab were gone. His belt and empty purse were found near the body. His taxicab was found in a parking lot 22 miles away. The tire marks near the body showed a vehicle had spun its wheels as it left the scene. All the evidence points to an intentional killing with robbery as the motive. This evidence, viewed in the light of reason and common sense, leaves no basis for a finding of death as the result of accident as the term "accident" is generally understood. The evidence, circumstantial, of course, offered nothing which even remotely tended to suggest, much less to support a finding, that death resulted through accidental means.

The plaintiff cites a number of cases, some our own, to the effect that when a *prima facie* case of coverage under a policy is made out that death resulted solely from external, violent, and accidental means, then in considering whether the insurer has relieved itself of liability under the exclusion clause in the policy, a presumption against suicide or against intentional killing by another arises where nothing appears except death by shooting. The presumption, if it is proper so to designate it, is little if anything more than another statement of the fact that the burden under the exclusion clause is upon the insurance company.

No attempt is here made to reconcile what this Court and others have said with respect to accidental death or death by accidental means. The definitions and holdings have arisen under different policy provisions and different factual situations. The cases have involved double indemnity provisions in life policies. They have arisen with respect to coverage provisions in accident policies, some of which insure against injury by accident, injury or death by external, violent, *or* accidental means, and injury or death by external, violent, *and* accidental means. The latter is the provision in this case. They have arisen under exclusion clauses in policies where the burden of proof is upon the insurance carrier. Each opinion must be interpreted in the light of the facts in the case. Taking our own advice, we hold the

plaintiff's evidence in this case, under the policy provision here involved, shows an intentional, not an accidental killing. The plaintiff's evidence not only shows lack of coverage, but it also establishes the defense set up in the answer that the death of the insured was caused by the intentional act of another.

When the plaintiff fails to show coverage under the insuring clause of a policy, nonsuit is proper. If the plaintiff's evidence makes out a case of coverage and at the same time establishes the defense that the particular injury is excluded from coverage, nonsuit is likewise proper. Such are the rules when the plaintiff's evidence does not make out a case, or does make out a defense. However, when the defendant's evidence, not in conflict with the plaintiff's, shows the plaintiff does not have a case, or that the defendant does have a complete defense, the defendant's remedy is by motion for a peremptory instruction to the jury. In the *Warren* cases, *supra*, the defendant, at the beginning of the trial, assumed the burden of proof. The plaintiff did not offer evidence. Consequently the defendant's remedy, when its evidence showed lack of coverage, was by prayer for a peremptory instruction rather than by motion for nonsuit. In the *Warren* cases the prayer was allowed. The Court directed the jury to answer the issue against the plaintiff on the ground that all the evidence showed the insured was intentionally shot and killed.

In this case the plaintiff's own evidence showed an intentional killing. That showing established lack of coverage. It showed also a bar under the exclusion clause. Either was fatal to plaintiff's cause, requiring nonsuit.

The judgment of the Superior Court of Johnston County is
Affirmed.