MRS. LILLIAN D. HENDERSON v. HARTFORD ACCIDENT AND INDEMNITY COMPANY.

(Filed 21 September, 1966.)

1. **Insurance § 3—**

   Notwithstanding that a policy of insurance will be construed liberally in favor of insured and strictly against the insurer preparing the contract, the courts cannot by construction enlarge the terms of the policy beyond the meaning of the language used.

2. **Insurance § 34—**

   In an action on a provision of a policy providing benefits for death resulting directly and independently of all other causes from bodily injuries effected solely through accidental means, the burden is upon plaintiff to show coverage within the terms of the policy.

**3. Same—**

　　There is a distinction between death by "accident" and death by "accidental means"; death as a result of an intentional act, even though an unusual and unexpected result of the act, is not a death by "accidental means" when there is no mischance, slip or mishap occurring in the doing of the intentional act.

**4. Same—**

　　Evidence tending to show that insured died from anoxia and cardiac stoppage shortly after exposure to smoke and gases in the discharge of his duties as a fireman is insufficient to show that his death was effected solely *through accidental means within the coverage of the policy in suit.*

APPEAL by plaintiff from *Martin, S.J.,* March 1966 Civil Session of BUNCOMBE.

Civil action by the plaintiff, beneficiary, to recover on a certificate of accident insurance issued by the defendant, in which it contracted to pay $5,000 for loss of life of the insured, Benjamin Franklin Henderson, "resulting from bodily injuries sustained during the term of this policy and effected solely through accidental means." The policy was in full force and effect at the time of the insured's death on January 15, 1962.

The evidence presented at the trial tended to show that insured was 54 years old, and in good health; that on January 15, 1962, as a member of the Enka Fire Department, he went to a fire on Plemmons Street where a dwelling was burning. He entered the back window of the dwelling with a fire hose and went to a bedroom at the front of the dwelling; that Charles Lee McMahan, another member of the fire department, shortly thereafter observed Mr. Henderson lying across a double bed in the corner of the front bedroom, with his head toward an open window. McMahan knocked the glass out of a double window and the smoke cleared out immediately, and Henderson shortly thereafter got off the bed and went ahead with the hose into another part of the house. There was an awfully thick, black and heavy smoke settling right down over the ground around the house, and the smoke had an awfully strong smell; that there were old automobile tires, hose and old mattresses in the basement of the house. About ten or fifteen minutes later Henderson went to his automobile and started to drive off in company with his son, Bobby Henderson, who was sitting in the front seat. There was evidence from Bobby Henderson that when his father started to drive off his father suddenly fell toward him on the seat "and was struggling to get his breath, breathing hard and had his eyes closed"; that Bobby Henderson spoke to his father and he did not respond; that he attempted mouth-to-mouth resuscitation and then immediately carried him to a medical clinic, where Dr.

Willis and Dr. Chipley worked with him. He never opened his eyes or moved; that after examination, the doctors pronounced insured dead.

There was medical opinion evidence from a physician admitted as an expert by the court "that the smoke in some way caused changes in his body, giving him cerebral ischemia due to anoxia, causing temporary loss of consciousness, with carbon dioxide excess in the lungs creating anoxia in the lungs, followed by anoxia of the blood and then anoxia of the cardiac muscle due directly to anoxia or to spasm of the coronary arteries producing cardiac-ventricular type cardiac fibrillation and cardiac arrest."

Plaintiff notified the Company of death through her attorney on January 26, 1962, and on March 19, 1962, defendant denied the claim.

This action was instituted in Buncombe County Superior Court and came on for trial at the March Session 1966. At the conclusion of plaintiff's evidence the defendant demurred to the evidence and made motion for judgment as of nonsuit, and demurred *ore tenus* to the complaint for failure to state a cause of action. Defendant's motion for judgment as of nonsuit was allowed and demurrer *ore tenus* was sustained.

Plaintiff excepted and appealed.

*Don V. Young for plaintiff appellant.*
*Williams, Williams and Morris and Ann H. Phillips for defendant appellee.*

BRANCH, J. Plaintiff assigns as error the granting of judgment of nonsuit. The policy here involved provides coverage "against loss resulting directly and independently of all other causes from bodily injuries sustained during the term of this policy, *and effected solely through accidental means.*" (Emphasis ours.)

We are cognizant of the well-settled law in this state that "since insurance policies are prepared by the insurer, they must be construed liberally in favor of the insured and strictly against the insurer," *Barker v. Iowa Mutual Insurance Co.,* 241 N.C. 397, 85 S.E. 2d 305, but that the rule of liberal construction does not justify the courts in enlarging the terms of the policy beyond the meaning of the language of the policy. *Weiss v. Insurance Co.,* 215 N.C. 230, 1 S.E. 2d 560.

The contract must be construed as the parties have made it. *Scarboro v. Insurance Co.,* 242 N.C. 444, 88 S.E. 2d 133.

In order to repel the defendant's motion for nonsuit, the plain-

tiff must bring the insured's death within the coverage provision above quoted.

It now seems to be well-settled law in this state that our courts have drawn a distinction between "accident" and "accidental means," on the theory that although the results of an intentional act may be an accident, the act itself, that is, the cause, where intended, is not an "accidental means," that where an unusual or unexpected result occurs by reason of the doing by the insured of an intentional act, with no mischance, slip or mishap occurring in doing the act itself, the ensuing death or injury is not caused by "accidental means."

In the case of *Skillman v. Insurance Co.*, 258 N.C. 1, 127 S.E. 2d 789, the evidence tended to show that insured was suffering from hypertension, and while driving his car along a straight highway he ran off the highway and into a river. The policy sued on provided for payment of loss "upon receipt by the company of due proof that the death of insured resulted, directly and independently of all other causes, from bodily injury sustained solely through external, violent and *accidental means.*" (Emphasis ours.) Denny, C.J., speaking for the Court in this case, said:

> "This Court has consistently held that there is a distinct difference in the meaning of the terms 'accidental death' and 'death by external accidental means.' In *Fletcher v. Trust Co.*, 220 N.C. 148, 16 S.E. 2d 687, Barnhill, J., later C.J., said: ' "Accidental" means that which happens by chance or fortuitously, without intent or design and which is unexpected, unusual and unforeseen. 29 Am. Jur., 706-7, sec. 931. "Accidental means" refers to the occurrence or happening which produces the result and not to the result. That is, "accidental" is descriptive of the term "means." The motivating, operative and causal factor must be accidental in the sense that is unusual, unforeseen and unexpected. Under the majority view the emphasis is upon the accidental character of the ultimate sequence of the chain of causation.' See also *Slaughter v. Ins. Co.*, 250 N.C. 265, 108 S.E. 2d 438, and *Cf. Vause v. Equipment Co.*, 233 N.C. 88, 63 S.E. 2d 173."

The case of *Langley v. Durham Life Ins. Co.*, 261 N.C. 459, 135 S.E. 2d 38, was a case in which the evidence tended to show that the insured was found lying face down on his bed some six to ten hours after death, his face buried but not entangled in the bed covers, and his nose, lips and entire face flat. In this case the Court again recognized the difference between accident and accidental means, and Bobbitt, J., speaking for the Court, said:

"While there is a division of authority elsewhere (see 29 A
Am. Jur., Insurance Sec. 1166 and Comment Note, 166 A.L.R.
469), this Court has consistently drawn a distinction between
the terms 'accidental death' and 'death by external accidental
means.' "

The Court has made the same distinction between accidental means
and accident in the cases of *Fletcher v. Trust Co.*, 220 N.C. 148, 16
S.E. 2d 687; *Scott v. Insurance Co.*, 208 N.C. 160, 179 S.E. 434;
*Mehaffey v. Insurance Co.*, 205 N.C. 701, 705, 172 S.E. 331.

There are very strong equities for the plaintiff in this case, in
that this was a policy of insurance issued under a group or blanket
policy to furnish coverage to a fireman when in the exercise of his
duties, and if there were such ambiguities as to allow a construc-
tion of the policy, we would tend to grant relief to the plaintiff;
however, in order for the plaintiff to establish coverage she must
show that insured's death was caused by "accidental means." In
the instant case the insured was voluntarily performing an inten-
tional act and there is no evidence of any unusual mishap, slip or
mischance occurring *in the doing of the act*. To the contrary, it ap-
peared that the *result* was unusual and unexpected and unforeseen.

An ambiguity in a life policy is to be construed most favorably
to the insured. The Courts cannot make a contract for the parties
and can only enforce the contract which the parties have made.
*Davis v. Fidelity Mutual Life Insurance Co.*, 107 F. 2d 150.

Unless the plaintiff's evidence in this case permits the legitimate
inference that the insured's death resulted directly and independently
of all other causes from bodily injuries sustained during the term of
this policy and *effected solely through accidental means*, nonsuit is
proper. *Slaughter v. Insurance Co.*, 250 N.C. 265, 108 S.E. 2d 438.

It is unnecessary for the Court to consider the plaintiff's second
exception in view of the result herein reached.

Affirmed.