GLADYS BONE v. CHARLOTTE LIBERTY MUTUAL
INSURANCE COMPANY

No. 7118DC21

(Filed 24 February 1971)

1. Insurance § 46— accident insurance — lye intentionally thrown in insured's face — injury by "accidental means"

Complaint of insured who was allegedly injured when another person secretly threw lye in her face, *held* sufficient to state a claim for relief under an accident policy providing coverage for injuries "effected solely through accidental means."

2. Insurance § 46— accident insurance — intentional act of another — injury by "accidental means"

An accident policy providing indemnity for death or injuries sustained through "accidental means" comprehends liability upon the death of or injury to the insured occasioned by the intentional act of another if the death or injury was not the direct result of insured's misconduct and was unforeseen by him, and the policy contains no exclusion of such liability.

APPEAL by plaintiff from *Kuykendall, District Court Judge,* 1 June 1970 Session of GUILFORD County District Court.

Plaintiff filed suit seeking to recover under a policy of insurance providing for the payment of hospital expenses and $10 per day up to 60 days of hospital confinement. She alleged issuance of the policy and payment of premiums. She further alleged that on 1 June 1966, she was alone in her home when an indi-

vidual came up behind her and secretly threw red devil lye in her face causing third-degree burns of her head, face and neck; that she was admitted to L. Richardson Memorial Hospital on 1 June 1966 and remained a patient there until 8 September 1966; that proof of loss was given defendant although no proof of loss was ever furnished by defendant. She further alleged that immediately after the injuries were sustained an agent of defendant was notified by an agent of plaintiff of the claim; that demand has been made and defendant has refused to pay. A copy of the policy was attached to the complaint as was a copy of the proof of loss.

Defendant answered, admitting the issuance of the policy, the payment of premiums, and the coverage afforded. All other allegations were denied. By way of further defenses, defendant averred that the complaint failed to state a claim upon which relief could be granted; that plaintiff had failed to give prompt notice of claim and failed properly to file proof of claim within the time required by the terms of the policy; and that plaintiff's injury resulted from the intentional act of another person which did not constitute injury through accidental means under the terms of the policy.

Defendant moved for summary judgment for plaintiff's failure to state a claim upon which relief could be granted, assigning as grounds therefor that if plaintiff proved all the allegations in her complaint, her claim could not be sustained because she was not injured by accidental means within the purview of the policy. Plaintiff answered the motion denying all allegations. Upon hearing, the trial court granted the motion and entered judgment dismissing the action at plaintiff's cost. Plaintiff appealed.

*Wade C. Euliss for plaintiff appellant.*

*Max D. Ballinger for defendant appellee.*

MORRIS, Judge.

The policy provisions germane to a determination of this appeal are not in dispute. The pertinent provisions are found under the section entitled "Loss Due to Hospitalization." It is there provided that "This policy covers loss due to Hospital residence resulting from accidental bodily injury sustained after the date of this policy, . . ." and " 'Injury' as used in this pol-

icy means bodily injury sustained after the date of this policy which is the sole cause of the loss and which is effected solely through accidental means while this policy is in force." Defendant states that these are the only policy provisions pertinent. The policy is not before us, so we assume that the policy does not contain any exclusion clause.

Defendant strongly urges that because plaintiff's injuries were intentionally inflicted by another person, she is not entitled to recover. His contention is that this does not come within the definition of "accidental means" adopted in this jurisdiction. It is true that this jurisdiction is among those which still make a distinction between loss due to "accidental means" and loss due to "accident." In *Chesson v. Insurance Co.*, 268 N.C. 98, 150 S.E. 2d 40 (1966), the Court said:

> "As this Court has pointed out many times ' "accidental means" refers to the occurrence or happening which produces the result and not to the result. That is, "accidental" is descriptive of the word "means." The motivating, operative and causal factor must be accidental in the sense that it is unusual, unforeseen and unexpected . . . [T]he emphasis is upon the accidental character of the causation— not upon the accidental nature of the ultimate sequence of the chain of causation.' *Fletcher v. Trust Co.*, 220 N.C. 148, 150, 16 S.E. 2d 687, 688."

In recent years, an increasing number of jurisdictions have repudiated the distinction between the term "accidental means" and the terms "accident," "accidental result," "accidental injury," "accidental death," and the like, and the terms are now more generally regarded as legally synonymous. 44 Am. Jur. 2d, Insurance, § 1221. Various reasons are assigned, but primarily it appears that courts rejecting the distinction do so on the ground that such a distinction is not understood by the average man for whom the policy is written and who purchases the insurance to protect himself from loss or injury in case of an accident to him. The insurance companies have it within their power, by simplicity and clarity of expression, to remove all doubt. For citations of cases from jurisdictions which have removed the distinction see 44 Am. Jur. 2d, *supra*, wherein it is noted that many of the courts were influenced by the dissenting opinion of Mr. Justice Cardozo in *Landress v. Phoenix Mutual Life Ins. Co.*, 291 U.S. 491, 78 L.Ed. 934, 54 S.Ct. 461 (1933). In his dissent-

ing opinion he noted that the continued attempt to distinguish between accidental results and accidental means would plunge this branch of the law into a "Serbonian Bog."

It is a well-established rule, in the absence of any policy provision on the subject, that where the insured is intentionally injured or killed by another and the insured is himself free from misconduct, the assault being unforeseen by insured, the injury or death is accidental within the meaning of an accident insurance policy. 44 Am. Jur. 2d, Insurance, § 1247.

This rule was set out by Justice Sharp in *Insurance Co. v. Roberts,* 261 N.C. 285, 134 S.E. 2d 654 (1964), where she said:

"When an insured is intentionally injured or killed by another, and the mishap is, as to him, unforeseen and not the result of his own misconduct, the general rule is that the injury or death is accidentally sustained within the meaning of the ordinary accident insurance policy, and the insurer is liable therefor . . ."

In an earlier case, *Harris v. Insurance Co.,* 204 N.C. 385, 168 S.E. 208 (1933), the policy involved was a life insurance policy providing for double indemnity in the event insured's death resulted "from bodily injury within ninety days after the occurrence of such injury provided death results directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental means, while the insured is sane and sober." The policy specifically provided that the double indemnity provision did not apply "in case death results from bodily injury inflicted by the insured himself, or intentionally by another person." On appeal from judgment entered on a verdict allowing recovery, defendant contended that its motion for judgment as of nonsuit should have been allowed because there was no evidence at the trial tending to show that the death of the insured was the result of a bodily injury effected solely through accidental means. The evidence was that insured, while engaging in a basketball game, was injured by a player on the opposing team. This player had the ball and was running toward the goal. The insured undertook to prevent the opposing player from making a goal and in the ensuing collision between them, insured was struck in his side or chest, developed pneumonia, and died within the 90-day period. Defendant contended that this mishap was not within the definition of "accidental

means" because it was not unexpected and unforeseen but was the probable result of the game in which the insured had voluntarily engaged. The Court, speaking through Justice Connor, noted that although the distinction between an accidental death and a death by accidental means had been recognized and applied by courts of other jurisdictions, no case involving such distinction had theretofore been presented to the court. With respect to those cases from other jurisdictions recognizing the distinction, the Court said:

> "In each of these cases, it was held that where the death of the insured resulted from his voluntary act, although such death was both unexpected and unforeseen, and for that reason accidental, the death was not caused by accidental means, within the meaning of these words as used in the policy of insurance on which the action was brought. This distinction, if conceded to be sound, is not applicable to the instant case. The insured in this case did not by his own act cause the injury which resulted in his death. He engaged voluntarily in the game of basketball, and while he anticipated collisions during the progress of the game with players on the opposing team, no such injury as that which he suffered by the act of his opponent was probable as the result of the game. This injury was effected by accidental means within the meaning of these words as used in double indemnity clauses in his policies of insurance."

The North Carolina law was interpreted by the United States Court of Appeals, Fourth Circuit, in *Metropolitan Life Insurance Co. v. Henkel,* 234 F. 2d 69 (1956), in an opinion by Parker, Chief Judge. The policy provided for payment of double indemnity for death occurring "as the result directly and independently of all other causes, of bodily injuries caused solely by external, violent, and accidental means . . ." The policy specifically excluded death resulting from bodily injuries intentionally inflicted by insured but did not exclude death resulting from injuries intentionally inflicted by another. Insured was killed in South Carolina while fleeing from officers of the law at a reckless and unlawful rate of speed of 90 miles per hour or more. There was no evidence that he was guilty of violating the law prior to his flight. It appeared that the officers were looking for a violator and when insured came along about midnight, he was accosted by the officers when one of them fired a signal shot. Insured speeded up his car, one of the officers gave chase, and

when insured came to a fork in the road, he lost control of the car, ran on the shoulder and caused the car to overturn, inflicting the fatal injuries to insured. In affirming recovery, the Court said:

> "In interpreting the provisions of the policy, we are governed by the law of North Carolina, as the law of the state in which the policy was applied for and delivered, *Horton v. Home Ins. Co.*, 122 N.C. 498, 29 S.E. 944; and under the law of North Carolina recovery may be had under a provision such as this *only where death results from accidental means and is not merely the accidental result of means knowingly and intentionally employed by the insured. Fletcher v. Security Life & Trust Co.*, 220 N.C. 148, 16 S.E. 2d 687. As we think that the death of insured was clearly the result of accidental means within the meaning of the policy, it is not necessary to go into the distinction between accidental means and accidental result, a distinction described by Mr. Justice Cardozo as a 'Serbonian Bog,' *Landress v. Phoenix Mutual Life Ins. Co.*, 291 U.S. 491, 499, 54 S.Ct. 461, 78 L.Ed. 934, and one which is being repudiated by 'an increasing number of jurisdictions,' Note 166 A.L.R. 473. An injury, or death, results from accidental means as distinguished from an accidental result, within the rule of those courts observing the distinction, 'if, in the act which precedes the injury', something unforeseen, unexpected, unusual, occurs which produces the injury. *United States Mutual Accident Ins. Co. v. Barry*, 131 U.S. 100, 121, 9 S.Ct. 755, 762, 33 L.Ed. 60, cited by the Supreme Court of North Carolina in *Fletcher v. Security Life & Trust Co., supra.*" (Emphasis ours.)

[1] In the case before us, the throwing of the lye was the act which preceded the injury. Obviously, *to the insured* that act itself was something unforeseen, unexpected, and unusual. She was guilty of no misconduct nor is there any evidence that she provoked the assault.

Our research does not disclose a case in this jurisdiction answering the precise question before us; *i.e.:* Under an accident policy providing for recovery for injuries "effected solely through accidental means," is insured entitled to recover where injuries were intentionally inflicted by another person, the insured being guilty of no misconduct, and the policy containing

Bone v. Insurance Co.

no provision excluding coverage where the injuries were intentionally inflicted by insured or another person?

Several cases have been before the Court where the policy provided for coverage for injury or death resulting from causes effected through accidental means when the injuries or death resulted from acts of another person. In *Clay v. Insurance Co.,* 174 N.C. 642, 94 S.E. 289 (1917), recovery was for death resulting from bodily injury sustained and "effected directly through external, violent and accidental means" and excluded death in consequence of the insured's violation of the law. Insured was killed while engaged in an affray in which he was the aggressor and which from the beginning took on the aspect of a deadly encounter. The Court held that the homicide could not be considered an accident. In *Powers v. Insurance Co.,* 186 N.C. 336, 119 S.E. 481 (1923), the policy required bodily injuries effected "solely through external, violent and accidental means" and specifically excluded injuries or death resulting from firearms. Insured heard a noise at the barn, walked out to investigate and was shot. In *Warren v. Insurance Co.,* 212 N.C. 354, 193 S.E. 293 (1937), also reported on subsequent appeals at 215 N.C. 402, 2 S.E. 2d 17 (1939), 217 N.C. 705, 9 S.E. 2d 479 (1940), and 219 N.C. 368, 13 S.E. 2d 609 (1941), the policy provided for coverage for injury resulting in death through external, violent and accidental means and specifically excluded "injuries inflicted intentionally by another person." Insured was killed by a man who opened the car door, grabbed insured's fiancee, and shot the insured. The evidence showed the injuries resulting in death were intentionally inflicted, warranting a peremptory instruction on that issue. In *Whitaker v. Ins. Co.,* 213 N.C. 376, 196 S.E. 328 (1938), the policy provisions and exclusions were the same as in *Warren, supra.* Insured, a game warden, was shot by the occupant of a car who was spotlighting deer, as he approached the car to investigate. In *Scarborough v. Insurance Co.,* 244 N.C. 502, 94 S.E. 2d 558 (1956), the policy insured against loss of life from bodily injuries "through purely accidental means." No exclusion appears. Insured was killed while engaging in an affray in which he was the aggressor. In *Fallins v. Insurance Co.,* 247 N.C. 72, 100 S.E. 2d 214 (1957), the policy insured against death by "external, violent and accidental means" and excluded death resulting from participation in or attempting to commit an assault or felony and violence intentionally inflicted by another person. The evidence was that

insured and another were fighting and insured's uncle shot at a telephone pole to stop them and hit insured with no intention to injure anyone. The jury verdict for plaintiff was affirmed. In *Goldberg v. Insurance Co.*, 248 N.C. 86, 102 S.E. 2d 521 (1958), the provision for coverage was the same as in *Fallins, supra,* but excluded death from homicide. Insured died as the result of a fractured skull and sub-dural hemorrhage sustained when he was knocked or pushed to the floor by another person. The Court affirmed the trial court in granting judgment as of nonsuit because the death was by homicide within the meaning of the exception clause. In *Slaughter v. Insurance Co.*, 250 N.C. 265, 108 S.E. 2d 438 (1959), the provision for coverage was the same as in *Fallins* and *Goldberg* but excluded from coverage was the intentional act of insured or any other person directly or indirectly causing death of insured. Insured was a taxi driver. His body was found in a ditch. His pistol, money and cab were gone. He had received two pistol wounds causing death. The Court held that plaintiff's own evidence showed an intentional killing and justified the nonsuit entered by the trial court. In *Gray v. Insurance Co.*, 254 N.C. 286, 118 S.E. 2d 909 (1961), the policy provisions and exclusions were the same as in *Slaughter, supra.* Insured was shot and killed by storeowner while insured was attempting to break in the store. The trial court denied recovery and the Supreme Court affirmed, saying that insured should have anticipated that his own misconduct would create circumstances which would render a homicide likely.

The more recent case of *Mills v. Insurance Co.*, 261 N.C. 546, 135 S.E. 2d 586 (1964), does not reach the question now before us but the problem is recognized. There the action was to recover the death benefit under a group policy insuring against "loss resulting directly and independently of all other causes from accidental bodily injuries (excluding suicide or any attempt thereat, while sane or insane) sustained while engaged in the discharge of any duties for the employer . . . " The employer-owner insured was shot and killed at 10:00 p.m. while he was drinking beer with other people at a service station. The Court, speaking through Bobbitt, J. (now C.J.), in arriving at the conclusion that insured's death resulted from accidental bodily injuries discussed cases affording coverage for death or injury by "accidental means," noted the distinction drawn by

Bone v. Insurance Co.

the Court between "accidental death" and "death by accidental means" and said:

"It is unnecessary to decide whether under the stipulated facts plaintiff would be entitled to recover if the policy provision were against loss (death) resulting from bodily injuries effected solely through 'external, violent, and accidental means.' We reserve this question for consideration and decision upon an appropriate record."

The Court quoted with approval statements of Higgins, J., in *Fallins v. Insurance Co., supra*: "An injury is *'effected by accidental means'* if in the line of proximate causation the act, event, or condition *from the standpoint of the insured person* is unintended, unexpected, unusual or unknown." (emphasis ours), and: "Injuries caused to the insured by the acts of another person, without the consent of the insured, are held due to *accidental means* unless the injurious acts are provoked and should have been expected by the insured." (Emphasis ours.) The Court also noted that expressions in *Slaughter, supra,* apparently to the contrary, should be regarded as *obiter dicta* and not authoritative.

It appears to us that the adoption of the philosophy expressed in the language of Higgins, J., in *Fallins v. Insurance Co., supra,* results in a logical interpretation. In our opinion the language of the policy should be interpreted as referring to insured's own intent and volition and not to the intent or volition of other persons which he cannot control and which he cannot be expected to foresee. We do not regard it essential, in order to make out a case of injury by "accidental means," so far as the injured party is concerned, that the party injuring him should not have meant to do so; for, if the injured party had no part in bringing the injury upon himself, and to him it was unforeseen, it seems clear that the fact that the deed was intentionally directed against him should not militate against the proposition that, as to him, the injury was brought on by "accidental means."

[2] We, therefore, conclude that an accident policy providing indemnity for death or injuries sustained through "accidental means" comprehends liability upon the death of or injury to the insured occasioned by the intentional act of another, if the death or injury was not the direct result of misconduct or an

assault by the insured but was unforeseen as far as he was concerned, unless the policy specifically excludes such liability.

This result finds support in other jurisdictions. *Travelers Ins. Co. v. Dupree,* 17 Ala. App. 131, 82 So. 579 (1919) ; *Richards v. Travelers Ins. Co.,* 89 Cal. 170, 26 P. 762 (1891) ; *Fulnettle v. North American Mut. Ins. Co.,* 43 Del. 505, 50 A. 2d 614 (1946) ; *Empire L. Ins. Co. v. Johnson,* 142 Ga. 330, 82 S.E. 893 (1914) ; *Mabee v. Continental Casualty Co.,* 37 Idaho 667, 219 P. 598 (1923) ; *Kascoutas v. Federal L. Ins. Co.,* 193 Iowa 343, 185 N.W. 125 (1922) ; *Broyles v. Order of United Commercial Travelers,* 155 Kan. 74, 122 P. 2d 763 (1942) ; *American Acci. Co. of Louisville v. Carson,* 99 Ky. 441, 36 S.W. 169 (1896) ; *Lothrop v. Travelers Ins. Co.,* 167 Minn. 340; 209 N.W. 20 (1926) ; *Fidelity & C. Co. v. Johnson,* 72 Miss. 333, 17 So. 2 (1894) ; *Ins. Co. v. Bennett,* 90 Tenn. 256, 16 S.W. 723 (1891) ; *Tabor v. Ins. Co.,* 104 W. Va. 162, 139 S.E. 656 (1927) ; *Button v. American Mutual Acci. Asso.,* 92 Wis. 83, 65 N.W. 861 (1896).

Reversed and remanded.

Judges BROCK and VAUGHN concur.