**Larry K. HOWARD et al., Appellants,**

v.

**FEDERAL CROP INSURANCE CORPORATION, Appellee.**

**No. 75–1184.**

United States Court of Appeals, Fourth Circuit.

Argued June 13, 1975.

Decided June 28, 1976.

Edgar R. Bain, Lellington, N. C., and Holt Felmet, Angier, N. C., for appellants.

Jack Crawley, Asst. U. S. Atty., Raleigh, N. C. (Thomas P. McNamara, U. S. Atty., and Joseph W. Dean, Asst. U. S. Atty., Raleigh, N. C., on brief), for appellee.

Before RUSSELL, FIELD and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

Plaintiff-appellants sued to recover for losses to their 1973 tobacco crop due to alleged rain damage. The crops were insured by defendant-appellee, Federal Crop

Insurance Corporation (FCIC). Suits were brought in a state court in North Carolina and removed to the United States District Court. The three suits are not distinguishable factually so far as we are concerned here and involve identical questions of law. They were combined for disposition in the district court and for appeal. The district court granted summary judgment for the defendant and dismissed all three actions. We remand for further proceedings. Since we find for the plaintiffs as to the construction of the policy, we express no opinion on the procedural questions.

Federal Crop Insurance Corporation, an agency of the United States, in 1973, issued three policies to the Howards, insuring their tobacco crops, to be grown on six farms, against weather damage and other hazards.

The Howards (plaintiffs) established production of tobacco on their acreage, and have alleged that their 1973 crop was extensively damaged by heavy rains, resulting in a gross loss to the three plaintiffs in excess of $35,000. The plaintiffs harvested and sold the depleted crop and timely filed notice and proof of loss with FCIC, but, prior to inspection by the adjuster for FCIC, the Howards had either plowed or disked under the tobacco fields in question to prepare the same for sowing a cover crop of rye to preserve the soil. When the FCIC adjuster later inspected the fields, he found the stalks had been largely obscured or obliterated by plowing or disking and denied the claims, apparently on the ground that the plaintiffs had violated a portion of the policy which provides that the stalks on any acreage with respect to which a loss is claimed shall not be destroyed until the corporation makes an inspection.

The holding of the district court is best capsuled in its own words:

"The inquiry here is whether compliance by the insureds with this provision of the policy was a condition precedent to the

recovery. The court concludes that it was and that the failure of the insureds to comply worked a forfeiture of benefits for the alleged loss." [1]

There is no question but that apparently after notice of loss was given to defendant, but before inspection by the adjuster, plaintiffs plowed under the tobacco stalks and sowed some of the land with a cover crop, rye. The question is whether, under paragraph 5(f) of the tobacco endorsement to the policy of insurance, the act of plowing under the tobacco stalks forfeits the coverage of the policy. Paragraph 5 of the tobacco endorsement is entitled *Claims*. Pertinent to this case are subparagraphs 5(b) and 5(f), which are as follows:

"5(b) *It shall be a condition precedent* to the payment of any loss that the insured establish the production of the insured crop on a unit and that such loss has been directly caused by one or more of the hazards insured against during the insurance period for the crop year for which the loss is claimed, and furnish any other information regarding the manner and extent of loss as may be required by the Corporation. (Emphasis added)"

"5(f) The tobacco stalks on any acreage of tobacco of types 11a, 11b, 12, 13, or 14 with respect to which a loss is claimed *shall not be destroyed until the Corporation makes an inspection.* (Emphasis added)"

The arguments of both parties are predicated upon the same two assumptions. First, if subparagraph 5(f) creates a condition precedent, its violation caused a forfeiture of plaintiffs' coverage. Second, if subparagraph 5(f) creates an obligation (variously called a promise or covenant) upon plaintiffs not to plow under the tobacco stalks, defendant may recover from plaintiffs (either in an original action, or, in this case, by a counterclaim, or as a matter of defense) for whatever damage it sustained

1. The district court also relied upon language in subparagraph 5(b), infra, which required as a condition precedent to payment that the insured, in addition to establishing his production and loss from an insured case, "furnish any other information regarding the manner and extent of loss as may be required by the Corporation." The court construed the preservation of the stalks as such "information." We see no language in the policy or connection in the record to indicate this is the case.

because of the elimination of the stalks. However, a violation of subparagraph 5(f) would not, under the second premise, standing alone, cause a forfeiture of the policy.

■■ Generally accepted law provides us with guidelines here. There is a general legal policy opposed to forfeitures. *United States v. One Ford Coach*, 307 U.S. 219, 226, 59 S.Ct. 861, 83 L.Ed. 1249 (1939); *Baca v. Commissioner of Internal Revenue*, 326 F.2d 189, 191 (5th Cir. 1963). Insurance policies are generally construed most strongly against the insurer. *Henderson v. Hartford Accident & Indemnity Co.*, 268 N.C. 129, 150 S.E.2d 17, 19 (1966). When it is doubtful whether words create a promise or a condition precedent, they will be construed as creating a promise. *Harris and Harris Const. Co. v. Crain and Denbo, Inc.*, 256 N.C. 110, 123 S.E.2d 590, 595 (1962). The provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such construction. *Harris*, 123 S.E.2d at 596. And *Harris*, at 123 S.E.2d 590, 595, cites *Jones v. Palace Realty Co.*, 226 N.C. 303, 37 S.E.2d 906 (1946), and *Restatement of the Law, Contracts*, § 261.

■ Plaintiffs rely most strongly upon the fact that the term "condition precedent" is included in subparagraph 5(b) but not in subparagraph 5(f). It is true that whether a contract provision is construed as a condition or an obligation does not depend entirely upon whether the word "condition" is expressly used. Appleman, *Insurance Law and Practice* (1972), vol. 6A, § 4144. However, the persuasive force of plaintiffs' argument in this case is found in the use of the term "condition precedent" in subparagraph 5(b) but not in subparagraph 5(f). Thus, it is argued that the ancient maxim to be applied is that the expression of one thing is the exclusion of another.

The defendant places principal reliance upon the decision of this court in *Fidelity-Phenix Fire Insurance Company v. Pilot Freight Carriers*, 193 F.2d 812, 31 A.L.R.2d 839 (4th Cir. 1952). Suit there was predicated upon a loss resulting from theft out of a truck covered by defendant's policy protecting plaintiff from such a loss. The insurance company defended upon the grounds that the plaintiff had left the truck unattended without the alarm system being on. The policy contained six paragraphs limiting coverage. Two of those imposed what was called a "condition precedent." They largely related to the installation of specified safety equipment. Several others, including paragraph 5, pertinent in that case, started with the phrase, "It is further warranted." In paragraph 5, the insured warranted that the alarm system would be on whenever the vehicle was left unattended. Paragraph 6 starts with the language: "The assured agrees, by acceptance of this policy, that the foregoing conditions precedent relate to matters material to the acceptance of the risk by the insurer." Plaintiff recovered in the district court, but judgment on its behalf was reversed because of a breach of warranty of paragraph 5, the truck had been left unattended with the alarm off. In that case, plaintiff relied upon the fact that the words "condition precedent" were used in some of the paragraphs but the word "warranted" was used in the paragraph in issue. In rejecting that contention, this court said that "warranty" and "condition precedent" are often used interchangeably to create a condition of the insured's promise, and "[m]anifestly the terms 'condition precedent' and 'warranty' were intended to have the same meaning and effect." 193 F.2d at 816.

■■ *Fidelity-Phenix* thus does not support defendant's contention here. Although there is some resemblance between the two cases, analysis shows that the issues are actually entirely different. Unlike the case at bar, each paragraph in *Fidelity-Phenix* contained either the term "condition precedent" or the term "warranted." We held that, in that situation, the two terms had the same effect in that they both involved forfeiture. That is well established law. See Appleman, *Insurance Law and Practice* (1972), vol. 6A, § 4144. In the case at bar, the term "warranty" or "warranted" is in no way involved, either in terms or by way of like language, as it was in *Fidelity-Phenix*. The issue upon which this case

turns, then, was not involved in *Fidelity-Phenix*.

The *Restatement of the Law of Contracts* states:

"§ 261. INTERPRETATION OF DOUBTFUL WORDS AS PROMISE OR CONDITION.

Where it is doubtful whether words create a promise or an express condition, they are interpreted as creating a promise; but the same words may sometimes mean that one party promises a performance and that the other party's promise is conditional on that performance."

Two illustrations (one involving a promise, the other a condition) are used in the *Restatement*:

"2. A, an insurance company, issues to B a policy of insurance containing promises by A that are in terms conditional on the happening of certain events. The policy contains this clause: 'provided, in case differences shall arise touching any loss, *the matter shall be submitted to impartial arbitrators*, whose award shall be binding on the parties.' This is a promise to arbitrate and does not make an award a condition precedent of the insurer's duty to pay.

3. A, an insurance company, issues to B an insurance policy in usual form containing this clause: 'In the event of disagreement as to the amount of loss it shall be ascertained by two appraisers and an umpire. The loss shall *not be payable until 60 days after the award of the appraisers when such an appraisal is required.'* This provision is not merely a promise to arbitrate differences but makes an award a condition of the insurer's duty to pay in case of disagreement." (Emphasis added)

We believe that subparagraph 5(f) in the policy here under consideration fits illustration 2 rather than illustration 3. Illustration 2 specifies something to be done, whereas subparagraph 5(f) specifies something not to be done. Unlike illustration 3, subparagraph 5(f) does not state any conditions under which the insurance shall "not be payable," or use any words of like import. We hold that the district court erroneously held, on the motion for summary judgment, that subparagraph 5(f) established a condition precedent to plaintiffs' recovery which forfeited the coverage.[2]

From our holding that defendant's motion for summary judgment was improperly allowed, it does not follow the plaintiffs' motion for summary judgment should have been granted, for if subparagraph 5(f) be not construed as a condition precedent, there are other questions of fact to be determined.[3] At this point, we merely hold that the district court erred in holding, on the motion for summary judgment, that subparagraph 5(f) constituted a condition precedent with resulting forfeiture.

The explanation defendant makes for including subparagraph 5(f) in the tobacco endorsement is that it is necessary that the stalks remain standing in order for the Corporation to evaluate the extent of loss and

**2.** The district court also referred to subparagraph 5(f) as a condition subsequent. The difference in terminology is of no consequence here.

**3.** Even apart from our interpretation of paragraph 5(f), plaintiffs' motion for summary judgment should not have been allowed. Plaintiffs' notice is predicated upon the assumption that defendant's entire defense was based upon its interpretation of paragraph 5(f). Actually, defendant denied paragraph VII of plaintiffs' complaint, which constituted a denial that plaintiffs suffered loss in the amount claimed; also it alluded to paragraph 5(c) which under certain circumstances may require a total production figure equal to the insurance provided. Plaintiffs' affidavit, which was not denied by a counteraffidavit, does state the amount of loss. Said affidavit does not, however, state facts sufficient to absolutely establish that said loss occurred as a result of a risk covered by the policy or to exclude all other possible defenses. Plaintiffs' assumption that liability was denied solely because of their acts of plowing under the tobacco stalks is apparently based upon the discovery deposition of adjuster Burr. Such a conclusion does not conclusively appear from Burr's deposition. But, even if it does so appear, the defendant would not be bound absolutely by Burr's testimony. Although Burr was an agent of the Corporation, his admission would be no more than evidence and not necessarily conclusive.

to determine whether loss resulted from some cause not covered by the policy. However, was subparagraph 5(f) inserted because without it the Corporation's opportunities for proof would be more difficult, or because they would be impossible? Plaintiffs point out that the Tobacco Endorsement, with subparagraph 5(f), was adopted in 1970, and crop insurance goes back long before that date. Nothing is shown as to the Corporation's prior 1970 practice of evaluating losses. Such a showing might have a bearing upon establishing defendant's intention in including 5(f). Plaintiffs state, and defendant does not deny, that another division of the Department of Agriculture, or the North Carolina Department, urged that tobacco stalks be cut as soon as possible after harvesting as a means of pest control. Such an explanation might refute the idea that plaintiffs plowed under the stalks for any fraudulent purpose. Could these conflicting directives affect the reasonableness of plaintiffs' interpretation of defendant's prohibition upon plowing under the stalks prior to adjustment?

We express no opinion on these questions because they were not before the district court and are mentioned to us largely by way of argument rather than from the record. No question of ambiguity was raised in the court below or here and no question of the applicability of paragraph 5(c) to this case was alluded to other than in the defendant's pleadings, so we also do not reach those questions. Nothing we say here should preclude FCIC from asserting as a defense that the plowing or disking under of the stalks caused damage to FCIC if, for example, the amount of the loss was thereby made more difficult or impossible to ascertain whether the plowing or disking under was done with bad purpose or innocently. To repeat, our narrow holding is that merely plowing or disking under the stalks does not of itself operate to forfeit coverage under the policy.

The case is remanded for further proceedings not inconsistent with this opinion.

*VACATED AND REMANDED.*