ANN A. LINDER v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

No. 7811SC129

(Filed 16 January 1979)

**Insurance §§ 50, 67.2— death by accidental means—insured's shooting of self—causal factor—presumption of accidental means—sufficiency of evidence**

In this action to recover under a policy providing coverage for death by "external, violent and accidental means," the pulling of the trigger discharging an automatic pistol held by the insured, not the raising of pistol, was the causal factor in insured's death; furthermore, plaintiff was entitled to a presumption that the insured's death was caused by accidental means where her evidence was not wholly inconsistent with a finding that, although insured intentionally aimed the gun at his own head, the gun accidentally triggered through a mischance, slip or mishap, and plaintiff's evidence was sufficient for

the jury on the strength of such presumption and evidence suggesting that insured had no reason to intend to shoot himself.

APPEAL by plaintiff from *Braswell, Judge.* Judgment entered 14 September 1977 in Superior Court, JOHNSTON County. Heard in the Court of Appeals 29 November 1978.

Plaintiff, as beneficiary of an insurance policy insuring the life of her deceased husband, instituted this action to recover, in addition to $36,750 already paid to her by defendant, $8,400 plus interest claimed to be due under the employee group accidental death and dismemberment policy. The policy in relevant part provides as follows:

> "BENEFITS—If the Employee, while insured for Employee Group Accidental Death and Dismemberment Insurance under the Group Policy, sustains bodily injuries effected solely through external, violent and accidental means, and, within ninety days after such injuries are incurred, suffers the loss of life, sight or limb as a direct result of such injuries and independently of all other causes, the Insurance Company will, subject to the provisions hereinafter stated, pay in one sum to the Employee, if living, otherwise to the Beneficiary designated by the Employee, the amount provided for such loss."

The following contractual exclusions apply to insured's coverage:

> "EXCLUSIONS AND REDUCTIONS.—The Employee Group Accidental Death and Dismemberment Insurance does not cover any loss which results from or is caused directly or indirectly, by (a) suicide, while sane or insane; or . . . ."

It has been stipulated that plaintiff is the named beneficiary in the policy and that notice of death was given as required.

Plaintiff's evidence tended to show that the insured Leonard Ray Adkins and plaintiff, formerly Ann Adkins, were married and residing in Cary on the date of the insured's death. Plaintiff and insured were both employed. No children were born of the marriage although they thought plaintiff was pregnant at that time.

On 30 June 1973, plaintiff spent the day with her parents at their home in Pine. Level. Plaintiff left the insured early that morning so he could spend the day with his brother and sister-in-

law. He drove with them to Pine Level late in the afternoon to bring plaintiff back to Cary for dinner and then to see off Leonard's brother and sister-in-law at the airport. The plaintiff testified that when she saw insured early that morning and after he arrived at Pine Level, "He was joking and making airy, free comments, which was his nature." On the way home from the airport, plaintiff and insured discussed attending a movie. Plaintiff insisted that she had a headache and preferred not to attend the movie. A disagreement ensued. After plaintiff and the insured arrived home, plaintiff sat down on the couch, and the insured sat nearby in a chair as they talked for a few minutes. "He was calm at that time." He then went into the kitchen and returned to the room with a .25 caliber automatic handgun which he tossed from hand to hand. The insured asked, "We are still not going to the movie tonight?" Plaintiff answered, "No." While about two feet from plaintiff, insured started raising the handgun with his right hand and asked in what plaintiff described as a joking tone of voice, "Do you want me to do this?" Plaintiff looked away as the gun was being raised and answered, "No." She then heard the gun discharge and saw insured fall to the floor.

Plaintiff testified that at the time of the incident she and the insured "owed bills on a couple of charge accounts", that insured was working at the North Carolina State University Computer Center and attending school at night, and that he had recently received a promotion at the computer center. David B. Pickens, who was best man at plaintiff's and insured's wedding and who had known the insured for roughly five years, testified that they were "good friends" and spent all their working hours together. Pickens could not recall the insured ever having mentioned any thoughts of suicide.

The gun that killed the insured was a .25 caliber automatic pistol which was kept in a kitchen cabinet over the stove in the insured's house. Plaintiff had seen the gun before when insured took it out for cleaning. At that time he demonstrated to plaintiff how to use the weapon. The plaintiff knew that the cartridge clip was usually kept in a kitchen drawer. Plaintiff testified, "As far as I know the clip was never replaced [in the gun after cleaning it] because I saw the clip sometime later in a kitchen drawer." There is no evidence that the clip was in the gun at the time it discharged, fatally wounding insured.

At the conclusion of plaintiff's evidence, defendant's motion for a directed verdict was denied and the case was submitted to the jury on the following issue: "Was the death of Leonard Ray Adkins, Junior, on June 30, 1973, a direct result of bodily injuries effected solely through external violent means and accidental means independently of all other causes?" The jury was unable to reach a unanimous verdict. The trial court, after reconsidering the motion for directed verdict, directed entry of judgment for the defendant. From the entry of judgment for defendant, plaintiff appeals.

*Knox V. Jenkins, by James R. Lawrence, Jr., for plaintiff appellant.*

*Emanuel and Thompson, by W. Hugh Thompson, for defendant appellee.*

MORRIS, Chief Judge.

Plaintiff assigns as error the trial court's entry of a directed verdict in favor of defendant insurance company. The court concluded that the plaintiff's evidence failed to establish that insured's death occurred under circumstances within the insuring provisions of the policy.

The burden is upon plaintiff, as named beneficiary in the insurance policy, to produce evidence sufficient to bring insured's death within the policy's insuring provisions. *Barnes v. Insurance Co.*, 271 N.C. 217, 155 S.E. 2d 492 (1967). Therefore, in reviewing the propriety of the directed verdict, we must determine if the evidence taken in the light most favorable to the plaintiff negates the possibility that insured died "solely through external, violent and accidental means". *Id.; Slaughter v. Insurance Co.*, 250 N.C. 265, 108 S.E. 2d 438 (1959).

Our courts continue to draw a critical distinction between the terms "accidental death" and death by "external, violent and accidental means". The distinction is explained by our Supreme Court in *Fletcher v. Trust Co.*, 220 N.C. 148, 16 S.E. 2d 687 (1941). The following language from that decision has often been quoted with approval by our Courts:

"'Accidental means' refers to the occurrence or happening which produces the result and not to the result. That is, 'ac-

cidental' is descriptive of the term 'means.' The motivating, operative and causal factor must be accidental in the sense that it is unusual, unforeseen and unexpected. Under the majority view the emphasis is upon the accidental character of the causation — not upon the accidental nature of the ultimate sequence of the chain of causation." 220 N.C. at 150, 16 S.E. 2d at 688.

In *Henderson v. Indemnity Co.*, 268 N.C. 129, 150 S.E. 2d 17 (1966), Branch, J., explained the rule as follows:

". . . although the results of an intentional act may be an accident, the act itself, that is, the cause, where intended, is not an 'accidental means,' that where an unusual or unexpected result occurs by reason of the doing by the insured of an intentional act, with no mischance, slip or mishap occurring in doing the act itself, the ensuing death or injury is not caused by 'accidental means.'" 268 N.C. at 132, 150 S.E. 2d at 19.

In order to apply the established law to the facts of this case, it is first necessary to isolate the motivating, operative, and causal factor in the insured's death. We conclude that on the evidence in this case the causal factor is the pulling of the trigger discharging the automatic pistol held by the insured. We draw the line at this point in the causal chain of events, not because we are fully satisfied with the logic of our analysis, but to avoid infinite legal hair-splitting necessitated by the impractical and archaic state of our law. Nevertheless, we specifically reject any analysis that would establish the raising of the handgun as the causal factor, even assuming insured intentionally aimed it at his own head. Clearly, intentionally pointing a gun at one's own head, whether the gun is known to be loaded or "unloaded", is careless conduct. And because defendant did not present evidence nor did he request that the question of suicide be submitted to the jury, it is apparent that the defense is relying upon this careless conduct of insured to defeat the beneficiary's right of recovery. However, the policy language upon which defendant relies does not specifically exclude coverage because of insured's unnecessary exposure to danger as did the policy in *Oakley v. Casualty Co.*, 217 N.C. 150, 7 S.E. 2d 495 (1940). The insured's unnecessary exposure to danger does not necessarily remove him from the coverage of this "accidental means" policy. As we understand the

law, even when an insured exposes himself or herself to reasonbly foreseeable danger, if the ultimate cause factor *is* a "mischance, slip or mishap occurring in doing the act" (*Henderson v. Indemnity Co.,* 268 N.C. at 132, 150 S.E. 2d at 19), the resulting injury *is* caused by "accidental means" although coverage may be excluded by other policy provisions.

Plaintiff has produced evidence which tends to suggest that the gunshot may have been unintentional. Because her evidence is not wholly inconsistent with a finding that the gun may have been accidentally triggered, through a mischance, slip, or mishap, she is entitled to a presumption that the means were accidental, " 'since the law will not presume that the injuries were inflicted intentionally by the deceased or by some other person' ". *Barnes v. Insurance Co.,* 271 N.C. at 219-220, 155 S.E. 2d at 494. On the strength of that presumption and because varying inferences can be drawn from the evidence suggesting that insured had no reason to intend to shoot himself, the plaintiff is entitled to have her case resolved by a jury.

Because plaintiff is entitled to a new trial, we need not consider her argument that the trial court was without authority to enter the directed verdict after declaring a mistrial.

Reversed.

Judges WEBB and MARTIN (Harry C.) concur.