WILLIAM DIXON v. MID-SOUTH INSURANCE COMPANY

No. 778DC840

(Filed 15 August 1978)

Insurance § 45— air embolism as cause of death—death from accidental injury—insurer obligated

 A contract of insurance which provided coverage for "loss resulting solely from accidental bodily injuries" did not require a finding of "injury by accidental means" for defendant to be obligated; rather, defendant was obligated under its contract upon a finding that insured died from accidental injury, and an air embolism which occurred after surgery removing insured's left arm and shoulder and which caused her death was an accidental bodily injury under the terms of the contract of insurance.

APPEAL by defendant from *Exum, Judge*. Judgment entered 14 June 1977 in District Court, LENOIR County. Heard in the Court of Appeals 29 June 1978.

Plaintiff is the beneficiary under Policy No. 150304 issued by defendant to Ella Mae Dixon, plaintiff's wife, which obligates defendant to pay for "loss resulting solely from accidental bodily injuries sustained while this policy is in force, hereinafter referred to as 'Injuries'." Thereafter the policy contains an "Accidental Death Benefit" of $2,000 in the following terms:

"If the Insured sustains 'Injuries' which shall result in the death of the Insured within ninety (90) days from the date of the accident, the Company will pay the Accidental Death Benefit. In addition, the Company will pay the amount of ten (10%) per cent of such Accidental Death Benefit to the beneficiary each month for twelve (12) consecutive months following the date of death of the Insured. Benefits under this Part 1 shall be in lieu of all other benefits provided by this policy."

Ella Mae Dixon died 28 August 1975 at North Carolina Memorial Hospital, Chapel Hill, following the surgical amputation of her entire left arm and shoulder to remove a cancerous tumor underneath her arm. The cause of death was determined to be an air embolism in the right ventricle of the heart.

Plaintiff filed proof of loss with defendant but defendant denied liability. The date of death, the relationship of the insured and beneficiary, and the existence of the policy in full force and effect on the date of insured's death were stipulated. It was also stipulated that, if the loss was covered under the policy, the beneficiary was entitled to recover $4,400.

The trial judge made findings of fact and concluded, *inter alia*, the following:

"That the policy in question is an 'accidental death' policy as distinguished from an 'accidental means' policy and does not require, as a prerequisite to coverage, for the insured to die of 'accidental means', but merely requires death resulting from accidental bodily injuries.

That the insured, Ella Mae Sutton Dixon, died as a result of accidental bodily injuries."

Judgment was entered in favor of plaintiff for $4,400 plus interest from 28 August 1975 until paid, and for the costs. Defendant appealed.

*Gerrans and Spence, by William D. Spence, for the plaintiff appellee.*

*McLeod and Senter, by William L. Senter, for the defendant appellant.*

MORRIS, Judge.

There are two basic questions raised by this appeal, the answers to which are determinative of the entire controversy:

1. Does the language of the policy of insurance in question obligate defendant only if the insured's injury was caused by accidental means, or is defendant obligated upon a finding of accidental injury?

2. Was the air embolism which caused insured's death an accidental bodily injury under the terms of the policy in question?

The rule is clear in this State that policies of insurance, having been prepared by the insurer, will be liberally construed in favor of the insured, and strictly against the insurer. Since the words used in an insurance policy have been selected by the insurance company, any ambiguity or uncertainty as to their meaning must be resolved in favor of the policyholder, or the beneficiary, and against the company. See cases cited in 7 Strong's, N.C. Index 3rd, Insurance, § 6.2. We do not feel that terms of the insurance policy in question in this case are ambiguous, but if they were, the above rule would apply.

The Courts of this State have clearly adopted the view that there is a distinct difference between a policy which provides coverage for "accidental injury" and a policy which provides coverage for "injury by accidental means". A sufficient discussion of the difference between "accidental injury" and "injury by accidental means", and their equivalents, can be found in the citations and annotations collected in 7 Strong's, N.C. Index 3rd, Insurance, § 45, *et seq.*, and we need not belabor that question here.

The insurance policy involved in this lawsuit clearly falls within the "accidental injury" class of coverage. It provides for coverage for "loss resulting solely from accidental bodily

injuries". "The words 'accident' and 'accidental' have never acquired any technical signification in law, and when used in an insurance contract are to be construed and considered according to the ordinary understanding and common usage and speech of people generally." 44 Am. Jur. 2d, Insurance, § 1219 p. 64. If the defendant had desired to draft its insurance contract to cover only "injury by accidental means", it could have done so. Such a distinction has long been recognized in this State. *See Fletcher v. Trust Co.*, 220 N.C. 148, 16 S.E. 2d 687 (1941).

Our answer to the first question posed above is that a finding of "injury by accidental means" is not required, and that defendant is obligated under its contract upon a finding that Ella Mae Dixon died from "accidental injury".

Even so, defendant argues that the evidence does not support the trial court's finding and conclusion that Ella Mae Dixon died as a result of accidental bodily injuries. We disagree. The following findings of fact were made by the trial judge from competent evidence offered at trial:

"That shortly prior to August 28, 1975, the insured, Ella Mae Sutton Dixon, a 45 year old black female, was referred by her family physician to North Carolina Memorial Hospital at Chapel Hill, North Carolina, for treatment of a malignant cancerous tumor under her left arm. That on August 19, 1975, the insured, Ella Mae Sutton Dixon met with Dr. Herbert J. Proctor, a general surgeon, at North Carolina Memorial Hospital who examined her and told her that an operation was needed to remove her left shoulder and arm and that if this operation was not undertaken the cancer would kill her. That after some deliberation the insured consented to the operation.

That on August 28, 1975, the insured underwent the operation for the removal of her left arm and shoulder at North Carolina Memorial Hospital in Chapel Hill. The chief surgeon during said operation was Dr. Herbert J. Proctor. Dr. Frantz and Dr. Kimbro also assisted in the operation. There were also medical personnel in charge of anesthesia and nurses present at various times during the operation.

The operation began at about 2:30 p.m., August 28, 1975, and was completed at approximately 5:30 p.m. That Dr. Proctor

and all medical personnel exercised extreme caution and care for the safety of the insured. That nothing unusual occurred during the operation and the operation was considered to be a successful surgical operation. That Dr. Proctor left the operating room at about 5:30 p.m. as the incision was being closed. That at this time Dr. Proctor felt the operation had been successful and that the operation had gone as planned in all respects. That the insured was alive at 5:30 p.m., August 28, 1975. That at about 6:15 p.m. on August 28, 1975, Dr. Proctor was informed by Dr. Frantz that the insured had died.

That on August 29, 1975, an autopsy was performed upon the insured, Ella Mae Sutton Dixon. That the autopsy took approximately three hours and was performed to determine the cause of death of Ella Mae Sutton Dixon.

That Ella Mae Sutton Dixon died on August 28, 1975 as a result of an air embolism. That her death was not intended, not foreseen and not expected. That her death was unusual and did not happen in the ordinary course of things.

That although death by air embolism is always a remote possibility in operations such as this one, it is a possibility in many surgical operations and procedures and it is considered a very slight risk or probability. That all precautions were taken during the operation to guard against air embolism. That the death of Ella Mae Sutton Dixon by air embolism was not foreseen, not expected and not intended by anyone.

That the insurance policy in question provides coverage for loss of life 'resulting solely from accidental bodily injuries'. That the policy in question is not an 'accidental means' policy.

That the insured, Ella Mae Sutton Dixon, died on August 28, 1975, as a result of accidental bodily injuries."

Defendant makes a strong jury argument upon its view of the evidence. Defendant argues that decedent underwent a drastic and major operation involving the removal of her entire left arm and shoulder; that an air embolism is a known risk and danger of the forequarter amputation type surgery which decedent underwent; the nature of the operation itself was a contributing factor to her death, and she did not die "solely from

accidental bodily injuries"; and that her death, therefore, was not within the policy coverage. The argument is interesting but not convincing. Defendant would have us overlook the competent evidence from which the trial judge made his findings of fact.

Our answer to the second question posed above is that the air embolism which caused Ella Mae Dixon's death was an accidental bodily injury under the terms of the contract of insurance.

Affirmed.

Judges BRITT and ARNOLD concur.