Melvin E. **MANN** and John Michael Mann, Appellees,

v.

**FEDERAL CROP INSURANCE CORPORATION, Appellant.**

No. 82–1828.

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1983.

Decided June 20, 1983.

Rehearing Denied July 25, 1983.

* Honorable Frank W. Bullock, Jr., United States District Judge for the Middle District of North    Carolina, sitting by designation.

Freddi Lipstein, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Elsie L. Munsell, U.S. Atty., Alexandria, Va., James A. Metcalfe, Asst. U.S. Atty., Norfolk, Va., William Kanter, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., on brief), for appellant.

Joseph A. Leafe, Norfolk, Va. (Willcox, Savage, Dickson, Hollis & Eley, P.C., Norfolk, Va., J. Samuel Glasscock, Glasscock, Gardy & Savage, Suffolk, Va., on brief), for appellees.

Before RUSSELL, WIDENER and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

This appeal presents a question of construction of a Federal Crop Insurance Corporation (FCIC or Corporation) policy. The district court found that the plaintiffs were due $84,062.80 with interest under the policy; however, the parties agree that $76,797.58 is the maximum amount recoverable. We find that the FCIC interpreted the policy correctly and reverse the court's judgment.

I

Because of extreme drought, the crop year 1980 produced inferior crop yields for most peanut farmers, plaintiffs included. Melvin Mann and John Mann usually harvested 3600 to 3900 pounds per acre, but their yield in 1980 was only 1141 pounds per acre for their 342.3 acres (390,629 pounds total). As expected, the scarcity of peanuts produced rapid escalation in market price, causing the market price to grossly exceed the support price.

While most peanut farmers must sell their crop in the fall, immediately after completion of the threshing process, the Manns have constructed storage bins to allow them to store their peanuts in the hope of obtaining a better price. In December 1980, the Manns obtained an extension of time to file their insurance claim with the FCIC. In January 1981, they sold 216,636 pounds of their peanuts, retaining 173,993 pounds for seed, to the Hubbard Peanut Company for the support price (.226 cents per pound) *plus* forty cents per pound (approximately 62 cents per pound total). On this sale, the Manns realized $84,062.80 above the support price.

When the plaintiffs submitted their claim to the FCIC, they failed to deduct the proceeds received above the support price.[1] This present dispute has arisen because the FCIC maintains that the insurance coverage is for a dollar amount on each unit of peanuts insured, and any profits above the support price must be set off against the insurance proceeds. The plaintiffs maintain, however, that the excess amount represents a "seed and drayage bonus" rendered for extra services and care provided by the farmer. The Manns submit that, in the past, FCIC has not counted this bonus against the insurance proceeds and that certain agents of FCIC represented to plain-

1. The Manns failed to deduct an amount of $76,797.58. There is a discrepancy of $7,265.22 between the amount received and awarded, $84,062.80, and the amount in dispute, $76,797.58. This discrepancy arises because the peanuts are insured, and the insurance computed against, separate units, not the entire acreage. 7 C.F.R. § 425.7(d)(8)(b) (1980). On one unit, Unit 7, the Manns actually received $7,265.22 more than the insurance coverage on the unit. This amount is recognized by both parties as profit, but because the insurance is computed on each unit separately, it is not charged against the coverage on other units where losses were sustained.

tiffs that this practice of not reducing insurance proceeds by the bonus would continue in 1980.

The trial court found that plaintiffs incurred the expense of storage, additional insurance and labor costs, and assumed the risk of loss from damage to the peanuts during storage.[2] Further, the court found that to allow the FCIC to count the "bonus" against the fair market value of the crop would be to allow the corporation to act inconsistently with its previous practices and rulings, thereby allowing the FCIC to be unjustly enriched while the farmer bore the risk of loss. The court awarded plaintiffs $84,062.80 plus interest from January 29, 1981.

The FCIC has appealed this judgment making the argument that: (a) the amount received by plaintiffs over the support price is not a "bonus" in keeping with its past practices, rather it is a profit, and (b) the purpose of the FCIC is to create a stable marketplace by insuring at the support price, thereby the FCIC insures against loss. It does not insure a farmer's profits.

## II

The policy issued by the FCIC guarantees the farmer he will get a certain dollar amount from his crop. The amount is the "applicable pounds of peanuts per acre multiplied by the average quota support price per pound for the insured type of peanuts for the crop year ...." 7 C.F.R. § 425.-7(d)(4)(a) (1980). For the Manns, this dollar amount was $553 per acre, or $189,291.90 total insurance. The dispute in this case, however, is not over the total amount of insurance; it is over the valuation of the peanuts actually sold.[3] That is because the value of the peanuts produced is charged against the amount of insurance to be paid. 7 C.F.R. § 425.7(d)(8)(b) (1980).

The plaintiffs argue, and the FCIC admits, that in years past the Corporation has not counted in its computation of loss a "seed and drayage bonus." This bonus has always consisted of a payment of two to six cents above support price for seed peanuts. The reason the "bonus" was not figured in the calculations was because it was a payment for the process of culling, cleaning, storing and hauling the seed peanuts. The Corporation also admits that if the Manns had claimed the normal two to six cent bonus, it would not have been charged this amount against their insurance payment. However, the Manns have claimed that the forty cent payment they received above the support price is a "seed and drayage bonus", and should not be used to reduce the amount paid them under the crop insurance.

The FCIC submits that the forty cent payment is not the usual bonus, rather it represents the fair market value of the peanuts in an abnormal market. It is the Corporation's position that the Manns have attempted to take advantage of the unusual market to secure a large profit; the evidence bears out the FCIC's argument.

This case turns on the proper method of valuation of the harvested peanut crop under a federal crop insurance policy. Under the regulations, there are two methods of valuation, 7 C.F.R. § 425.7(d)(8)(c)(1) and (c)(2). Subsection (c)(1) provides that "[t]hreshed production which has been sold shall be valued at the gross receipt or the fair market value (as determined by the Corporation) taking into consideration the average quota support price." The valuation of "threshed but not sold" peanuts is controlled by subsection (c)(2) and its provides that they "shall be valued at the fair market value (as determined by the Corporation) taking into consideration the average quota support price."

■ The plaintiffs argue that all their peanuts should be valued at support price

2. Crop insurance does not cover the peanuts after they are removed from the field and placed in storage.

3. Both the Manns and the FCIC valued the 173,993 pounds of peanuts retained for seed at

the support price. 7 C.F.R. § 425.7(d)(8)(c)(2) (1980). This dispute is relegated solely to the valuation of the 216,636 pounds of peanuts actually sold.

because that was the value when they were harvested, threshed and stored and because the bonus is for storage, drayage and other services; therefore, the bonus does not reflect the fair market value. FCIC maintains that the peanuts that were threshed and sold should be valued at the gross receipt because that is the true indication of fair market value. For the reasons stated below, we agree with the FCIC.

First, the market in 1980 was unusual because of extreme crop failure. This led to an inflated market unlike that of any previous year. The chief of contract development for the FCIC testified that over 1000 claims had to be recomputed and insurance proceeds reduced because farmers had failed to include these inflated profits when making their claims to crop insurance. In a freak market, such as this, the best indication of fair market value is the gross receipt.

Second, the purpose of the FCIC is to insure a stable ground floor for the price [4] of a commodity, thereby protecting farmers against loss resulting from unavoidable causes such as drought. 7 U.S.C. § 1508(a). It was not the intent of Congress to insure profits, but to prevent disastrous losses.

Third, the FCIC used nationwide the gross receipt method of valuation provided for in the policy and the regulations. Even if it were not an accurate reflection of the fair market value, it is what is called for under the regulations and the policy.

Fourth, while the Corporation had not counted a "seed and drayage bonus" in other years, the amount in dispute here is not such a "bonus". Harvey J. Hubbard, Jr., the purchaser of Mann's peanuts, testified that the price he paid for the peanuts did not include a "bonus" or premium for services, rather it reflected the going market rate for peanuts. The receipt from the sale has no notation regarding a bonus for seed or drayage.

We therefore find that the valuation by the FCIC under 7 C.F.R. § 425.7(d)(8)(c)(1) at the gross receipt was the proper method of valuation. Thus, the Manns were due $29,123.52 under their FCIC policy. This amount, according to the record, has already been paid.

### III

■ The Manns have argued that if we were to find adversely to them on the issue of valuation, they should still prevail because the FCIC is estopped from deducting the forty cents per pound from the policy amount.

Their estoppel argument is based upon statements by an FCIC insurance agent and field adjustment supervisor. The Manns state, and the FCIC agrees, that these men told the Manns that "bonuses" would not be counted in 1980. These agents testified at trial, however, that their statements were made before the surge in the market price and that they both were referring to the "seed and drayage bonus" for services that had not been counted in the past, not a forty cent profit due to abnormal market conditions.

An agent of the FCIC could not extend crop insurance where there was none because the doctrine of estoppel cannot extend the coverage beyond that authorized by Congress and the rules promulgated by the FCIC. *FCIC v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). The regulations and the policy stated that the threshed and sold crop is to be valued at gross receipt or fair market value. The FCIC valued the crop according to the explicit language of the regulations and policy and the valuation was not contrary to past practices and policies of the agency. The farmer is charged with knowledge of the regulation and the policy; the doctrine of estoppel cannot be used to expand the coverage. 332 U.S. at 384–385, 68 S.Ct. at 3–4.

---

**4.** The insured price is the support price. In 1980 the market price exceeded the support price nationwide for the first time. In a "down market", when the market price is less than the support price, the farmer receives the average support price from the Department of Agriculture under the support price program. The FCIC indemnity in a down market is reduced because it takes into account the fact that the farmer receives the support price.

## IV

The Manns received the $29,123.52 they were entitled to under the terms of their policy and the regulations. Because the policy coverage could not be extended by estoppel and because the FCIC used the proper method of valuation, we find that the plaintiffs have received all that is due them; accordingly, we reverse the judgment of the district court.

REVERSED.