Ferma L. **WARD** and Kathy M. Ward, Plaintiffs,

v.

**FEDERAL CROP INSURANCE CORPO-RATION, C.A. Perry & Sons, Incorporated Fertilizer Company, Gregory Berryman and E.L. Ross Agency, Inc., Defendants.**

**No. 84–46–CIV–2.**

United States District Court, E.D. North Carolina, Elizabeth City Division.

Feb. 14, 1986.

Everette Thompson, Trimpi, Thompson & Nash, Elizabeth City, N.C., for plaintiffs.

Gerald F. White, Herbert T. Mullen, Jr., White, Hall, Mullen, Brumsey & Small, Elizabeth City, N.C., for defendants.

James S. Perry, Asst. U.S. Atty., Raleigh, N.C., for Federal Crop Ins. Corp.

## ORDER

JAMES C. FOX, District Judge.

### STATEMENT OF THE CASE

This action was brought by plaintiffs, Ferma L. Ward and Kathy M. Ward (hereinafter "the Wards"), against the Federal Crop Insurance Corporation (hereinafter "FCIC"), C.A. Perry & Sons, Inc., Fertilizer Company, Gregory Berryman, and E.L. Ross Agency, Inc., pursuant to 28 U.S.C. § 1331 and 7 U.S.C. § 1508. The Wards, in their complaint, allege that:

1. FCIC breached its insurance contracts with the Wards by refusing to compensate them for their 1983 crop losses of $23,000 due to weather damage.

2. Gregory Berryman and FCIC employees wrongfully impaired the Wards' attempt to file a claim with FCIC causing the Wards to incur attorneys' fees and great mental distress; and

3. FCIC employees maliciously, fraudulently and negligently failed to discharge a duty to the Wards to assist them in filing acreage reports or to inform them appropriately about their insurance policies.

This matter is before the court on FCIC's motion for summary judgment. On January 3, 1986, the court heard oral argument of counsel on said motion. At that time, the Wards conceded that their cause of action against FCIC was solely predicated on breach of contract, i.e., the first allegation listed above. Accordingly, the court granted partial summary judgment in favor of FCIC, and dismissed all claims against FCIC except the Wards' claim for breach of contract wherein they claim the right to $23,000 by reason of their crop damage. FCIC's motion for summary judgment on the latter claim is now ripe for disposition.

### STATEMENT OF FACTS

The uncontraverted facts appear to be as follows:

On March 22, 1982, the Wards applied to FCIC for federal crop insurance to cover their corn, soybean and peanut crops. The application listed the crops covered, the price level at which the Wards desired insurance coverage, and the number of acres of each crop the Wards planted. Under the terms of the application, FCIC accepted the application unless FCIC notified the applicant of rejection within thirty days of the date exhibited on the application. The application was not rejected, and accordingly, the Wards became eligible to effect annual crop insurance under valid FCIC contracts for peanuts, corn and soybeans for 1982 and succeeding crop years, each contract being identified by contract no. 37–041–35047. Such contracts were never cancelled or terminated pursuant to the provisions thereof.

In 1982, the Wards failed to file with the FCIC service office any acreage reports indicating that they planted any of the aforementioned crops, and therefore no insurance coverage was effected and no 1982 premium therefor became due to FCIC from the Wards. During the fall of 1982, the Wards received a premium notice confirming that there was a zero amount due and that no acres were insured under the subject insurance contracts.[1] On December 6, 1982, 1983 crop insurance policies for corn, soybeans and peanuts indicating the Wards' eligibility for 1983 insurance thereunder, were mailed by FCIC from Kansas City to the Wards. Such crop insurance policies were received by the Wards during the winter of 1983, and in the spring of 1983, the Wards received a confirmation from FCIC that they had federal crop insurance available to them for that year. The confirmation was dated March 31, 1983, the date upon which FCIC could have cancelled the contracts pursuant to paragraph 15 thereof for the Wards' failure to

---

1. FCIC apparently bills its insureds at the end of the crop year to accommodate their financial needs.

pay any past indebtedness due thereunder. At the time of such receipt by the Wards, no indebtedness was due by them to FCIC as no insurance had in fact been effective for crop acreage the prior year, 1982.

The Wards' FCIC contracts required the Wards to report the acreage to be insured for corn, soybeans and peanuts for the year 1983, such report to be filed by July 15th, of that year. The Wards did not file a timely acreage report under their FCIC contracts for any of the aforementioned crops for said year. The Wards did submit acreage reports to the Agricultural Stabilization and Conservation Service (ASCS) office on June 9, 1983, however, six days prior to the deadline of filing with FCIC. The ASCS is not an agent of or component part of FCIC.

During the summer of 1983, the Wards suffered a complete loss of their corn, soybean and peanut crops. In December, 1983, the Wards received a 1983 premium notice confirming that there was a zero amount due and that no acreage was insured under the 1983 contracts. In June of 1984, almost one year later, the Wards filed acreage reports for the acreage planted with said crops in 1983, and at that time filed a claim for the loss which they incurred in the latter year by reason of the destruction of their crops. On August 22, 1984, FCIC rejected the plaintiffs' claims under the contracts for the 1983 crop losses.

As previously indicated, the FCIC contracts were continuous contracts (in the nature of insurance binders) anticipated to continue from year to year even though the insured could choose not to participate in the insurance program in any given year. Under the contracts, an insured, at his election, could effect insurance coverage, or, conversely, he could decide not to have any acres covered by insurance and by reason of the absence of such coverage concomitantly not be liable to FCIC for any insurance premiums. The contracts provide that if no premium is earned by FCIC for five consecutive years, the contracts automatically terminate.

The premium due FCIC for any year depends upon and is correlated to the amount of crop acreage to be insured. In this regard, item 3 of the terms and conditions of the corn and soybean contracts provides as follows:

3. REPORT OF ACREAGE, SHARE, AND WHERE APPLICABLE, PRACTICE:

You shall report on our form:

a. All the acreage of corn [soybeans] in the county in which you have a share.

b. the practice; and

c. your share at the time of planting. You shall designate separately any acreage that is not insurable. You shall report if you do not have a share in any corn [soybeans] planted in the county. This report shall be submitted annually before the reporting date. If you do not submit this report by the reporting date, we may elect to determine by unit the insured acreage, share and practice or we may deny liability on any unit. Any report submitted by you may be revised only upon our approval.

Item 3 of the terms and conditions of the peanut policy contains slightly different language:

3. RESPONSIBILITY TO REPORT ACREAGE, SHARE, POUNDAGE QUOTA, AND, WHERE APPLICABLE, PRACTICE.

You shall submit to us on our prescribed form, a report showing (a) all acreage of peanuts planted in the county (including a designation of any acreage to which insurance does not attach) in which you have a share, (b) your share therein at the time of planting, (c) the effective poundage marketing quota, if any, applicable to the unit for the current crop year as provided under ASCS Peanut Marketing Quota Regulations and such quota shall not be subject to change by you and (d) where applicable, the practice. Such report shall be submitted each year not later than the acreage reporting date on file in your service office.

The peanut policy contains additional pertinent language in Section 2(b) of the appen-

dix thereto (additional terms and conditions) which reads as follows:

> (b) If you do not submit an acreage report on or before the acreage reporting date on file in your service office, we may elect to determine by units the insured acreage and share or declare the insured acreage on any unit(s) to be "zero." If you do not have a share in any insured acreage in the county for any year, you shall submit a report so indicating. Any acreage report submitted by you may be revised only upon approval by us.

The crux of the issue before the court is whether or not the timely submission of acreage reports to FCIC is a condition precedent to FCIC insurance coverage, as FCIC contends, or whether the obligation to report acreage to be insured is a promise or covenant on the part of the insured, as opposed to a condition precedent to insurance coverage.

## DISCUSSION

The Wards contend, as indicated, that failure to file acreage reports is a promise or covenant, and that the breach thereof only gives FCIC a defense by way of an offset to costs incurred by it in determining the amount of acreage planted by the Wards during the year in which the loss occurred. In arguing against acreage reporting as a condition precedent, the Wards note that such term, per se, does not appear in conjunction with the acreage reporting requirements, and point out that in paragraph 8 of the peanut policy the term "condition precedent" is used, although not in relation to acreage reporting requirements.[2] The Wards assert that such use of the term "condition precedent" is indicative of the fact that FCIC was aware of its

meaning and hence would have used the same term had it meant to effectuate a condition precedent in some other portion of the contract. The court finds this argument to be without merit, a rose being a rose whether or not it bears that label or has that nomenclature applied to it.

Furthermore, as to the acreage reporting requirement being a covenant or a promise,[3] the Wards in effect argue that an insured, under a five-year continuing FCIC contract could (1) plant a crop in each of the first four years, (2) each year breach his "promise" to report his planted acreage, (3) as a result of his failure to report planted acreage, pay no insurance premium in any of said years, and (4) continue his failure to report until the fifth year, but thereafter, upon suffering a crop loss in such year, report the acreage and the loss, pay the premium, and recover under the insurance contract. The Wards concede, in such event, that the insured would owe the insurer the insurance premiums due in each of the first four years for the acreage planted therein. One can only speculate as to how the insurer would know of the insured's liability for and the amount of premiums due in each of the first four years. Additionally, even if such premiums were paid, their belated payment would be a bargain as compared to the insured's recovery for the crop loss occurring in the fifth year. Assuming no loss in the fifth year, the insured would never pay any insurance premium and yet he would always be in the position to effectuate crop insurance after a loss had occurred. The Wards' argument to such effect does not comport with the economic theory or reality of the insurance business and FCIC practices. The Wards would impose upon an insurance company

---

**2.** Paragraph 8 in this regard reads:

8. CLAIM FOR INDEMNITY. (a) It shall be a condition precedent to the payment of any indemnity that you (1) establish the total production of peanuts on the unit and that any loss of production was directly caused by one or more of the insured causes during the insurance period for the crop year for which the indemnity is claimed and (2) furnish any other information regarding the manner and extent of loss as may be required by us.

**3.** The Wards' reliance upon *Howard v. Federal Crop Insurance Corporation,* 540 F.2d 695 (4th Cir.1976), in support of this contention is misplaced. The issue in *Howard* was whether plaintiffs disking or plowing of fields after a crop loss vitiated FCIC's obligation to *pay* for the loss pursuant to insurance coverage in force, as opposed to the instant issue, i.e., whether insurance coverage was effected.

(FCIC) the duty to compensate for a loss when it has received neither a record of the property covered nor any premium payments to compensate for the risk of insuring that property.

The court agrees with the defendant, and perceives the acreage crop reporting requirement a condition precedent for the effectuation of insurance coverage. Restatement (Second) of Contracts § 1225, states:

> Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused. Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur.

The Restatement defines "condition" as "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *Id.* at § 1224. The positions enunciated in the Restatement reflect well established contract principles which have long been adopted in American law. *See Taylor v. Mason*, 9 (Wheat) U.S. 325, 6 L.Ed. 101 (1824). The conditions precedent to payment of a claim pursuant to an insurance policy with FCIC parallel those required under any property insurance policy. The foundation requirement is that the policyholder must report all the acreage (property) he wishes covered. In the absence of a valid description of the property, neither the value thereof, the amount of insurance, nor the concomitant premium for the insurance can be calculated. In short, the insurance risk cannot be evaluated and the insurer cannot arrive at compensation due it to compensate it for the assumption of such risk.

Neither ignorance of nor hardship to the Wards, nor their misplaced reliance upon the acts of an agent of FCIC, can vitiate the requirements that the Wards comply with a condition precedent to the effectuation of insurance coverage in this case.

In *Federal Crop Insurance Corporation v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), the Supreme Court addressed the issue of what effect a policyholder's noncompliance with his contractual obligations should have on his claim for indemnity. The Court declared that the policyholder is bound by the regulations promulgated under the Federal Crop Insurance Act. *Id.* at 385, 68 S.Ct. at 3. The court further declared that the regulations are binding irrespective of the farmer's knowledge, or the field agent's representation to the contrary. *Id.* at 383, 68 S.Ct. at 2.

In *Merrill*, the policyholders reseeded the acreage on which they had suffered a loss. By the regulations promulgated under the Federal Crop Insurance Act, the FCIC is not liable for a loss on reseeded acreage. The policyholders had no actual knowledge of these regulations; moreover, they had been misled by a local representative to believe they were in compliance with FCIC requirements. The court held that although their ignorance was innocent, they were nevertheless responsible to read and adhere to the provisions of the contract. The court declared:

> The case no doubt presents phases of hardship. We take for granted that, on the basis of what they were told by the Corporation's local agent, the respondents reasonably believed that their entire crop was covered by petitioner's insurance. And so we assume that recovery could be had against a private insurance company. It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business theretofore conducted by private enterprise or engages in competition with private ventures.

*Id.* at 383, 68 S.Ct. at 2.

The Supreme Court's holding in *Merrill* has been consistently cited by the Fourth Circuit in cases concerning the FCIC. In *Mann v. Federal Crop Insurance Corporation*, 710 F.2d 144 (4th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984), the Court of Appeals for the Fourth Circuit considered the case where agents of the FCIC misled the plaintiffs to believe they could submit a claim

for indemnity without deducting from that claim the amount gained by storing their harvested product for a period of time. Not deducting the proceeds gained from this storage contravenes certain regulations promulgated under the Federal Crop Insurance Act. The court held the plaintiffs were bound by their contractual restrictions, notwithstanding the misrepresentation by the local agent.

In *Mann,* the plaintiffs attempted to argue from equity, reasoning that the FCIC should be estopped from demanding a deduction because the local representative indicated such a deduction was unnecessary. The court rejected the plaintiffs' argument by concluding:

> An Agent of the FCIC could not extend crop insurance where there was none because the doctrine of estoppel cannot extend the coverage beyond that authorized by Congress and the rules promulgated by the FCIC. *FCIC v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947)... The farmer is charged with knowledge of the regulation and the policy; the doctrine of estoppel cannot be used to expand the coverage. 332 U.S. at 384–385, 68 S.Ct. at 3–4.

*Id.* at 147.

Another Fourth Circuit case concerning the effect of noncompliance with contractual duties stipulated by the FCIC is *Felder v. Federal Crop Insurance Corporation,* 146 F.2d 638 (4th Cir.1944). In *Felder,* the plaintiff failed to file his proof of acreage loss within the 30 days required by the contract. Although he missed the deadline by only a month, the court found that strict compliance with this regulation was a condition precedent to recovery on any FCIC policy. As in the instant case, where the plaintiff's failure to file an acreage report was in no way a result of an act or omission by the FCIC, the court in *Felder* found that no act of any FCIC official prevented the timely filing of proofs of loss. The court concluded that, in spite of the hardship occasioned by making the plaintiff abide by contractual regulations, the FCIC was not bound to indemnify the plaintiff because of his failure to fulfill a condition precedent. *Id.* at 640. In its conclusion,

the court in *Felder* cited the famous passage by Mr. Justice Holmes in *Rock Island, Arkansas Louisiana R. Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920):

> Men must turn square corners when they deal with the Government. If it attaches even purely formal conditions to its consent to be sued those conditions must be complied with.... At all events the words are there in the statute and the regulations and the Court is of opinion that they mark the conditions of the claimant's right.

*Id.* at 641. The Supreme Court relied on this same passage in their conclusion in *Merrill.* Commenting on Mr. Justice Holmes' remark the court stated that it "does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Merrill,* 332 U.S. at 385, 68 S.Ct. at 3.

A recent district court decision, in South Carolina, also relied on the rule reiterated in *Merrill* and *Felder.* In *Brown v. Federal Crop Insurance Corporation,* No. 82–3161–2 (D.S.C. Sept. 2, 1983), *aff'd,* 738 F.2d 428 (4th Cir.1984) the district court considered a case factually similar to the instant case. In *Brown,* FCIC agents accepted an application for federal crop insurance from the plaintiff. The plaintiff failed to sign the application as required to bind the corporation to a contract. In spite of the representations by FCIC agents that the plaintiff had coverage, the court concluded that the plaintiff's failure to abide by his contractual duties severed his ability to demand remuneration for his loss. The court relied heavily on *Merrill,* and it cited with favor the language of a similar Fifth Circuit case:

> Plaintiff cannot make for himself a crop insurance contract by relying on Wilson, who was in charge of the Agricultural Committee office. It was his duty, not that of Wilson, to know whether or not he had such crop insurance. However much one would like to see plaintiff receive remuneration for the loss of his crop, the Government has set certain

standards by which individuals shall conduct themselves in procuring the benefits of the crop insurance program. They are in all respects just and fair. We cannot abandon them in favor of the plaintiff, who has shown a lack of diligence.

*Id.* at 10 (quoting *Frier v. Federal Crop Insurance Corporation,* 152 F.2d 149, 150 (5th Cir.1945), *cert. denied,* 328 U.S. 856, 66 S.Ct. 1343, 90 L.Ed. 1628 (1946).[4]

For the reasons heretofore expressed, to-wit: the Wards' failure to comply with the condition precedent to the effectuation of insurance coverage for their 1983 crops, FCIC's motion for summary judgment for the Wards' breach of contract claim against it is ALLOWED. Accordingly, this action as to the defendant FCIC is herewith DISMISSED.

SO ORDERED.

---

**4.** It is true, as Wards point out, that neither *Merrill, Mann* nor *Brown* involved the waiver or estoppel of the application of a condition precedent in any FCIC contract. Such cases do stand for the proposition, however, that an agent of FCIC cannot, through estoppel, extend insurance coverage beyond that authorized by Congress and the rules promulgated by FCIC.