MAGGIE H. EASON v. STATE CAPITAL LIFE INSURANCE COMPANY

No. 703DC127

(Filed 27 May 1970)

1. Insurance § 67— action on accident policy — death of on-duty policeman — accidental means — nonsuit

Evidence *held* insufficient to support a jury finding that the insured under an accident policy, a policeman, died solely from accidental means so as to bring his death within the coverage of the policy, where the evidence was to the effect that the policeman was observed searching a suspect who had his hands over his head, that a shot was fired and the policeman fell to the ground, and that the policeman was found dead on the pavement where he fell, and there was no evidence whether the death was caused accidentally or intentionally.

2. Insurance § 67— action on accident policy — burden of proof

In an action on an accident policy, the plaintiff must show that the loss sued upon falls within the terms of the coverage of the policy; the insurer has the burden of showing, once coverage has been established, that the circumstances of the loss bring it within any exclusionary clauses.

3. Insurance § 45— accident policy — interpretation of language

Language in an accident policy affording coverage on "injuries sustained solely through external, violent and accidental means" is interpreted to mean that the cause of the allegedly compensable event must be accidental in nature.

APPEAL by plaintiff from *Roberts, J., Chief District Judge,* October 1969 Session of the General Court of Justice, District Court Division, PITT County.

This suit was commenced by the widow of the decedent herein, Lyman Eason (Eason), to recover for Eason's death under the terms of an accidental death or injury policy issued by the defendant 16 April 1956 and in effect at the time of his death on 10 November 1965. It was stipulated by the parties that all premiums due as of 10 November 1965 had been paid, that all notice provisions had been

complied with, and that if plaintiff were entitled to recover anything it would be the face amount of the policy, $2,500.

The policy provides that the defendant insures the named insured (Eason) ". . . against loss resulting directly and independently of all other causes from bodily injuries sustained by the Insured solely through external, violent and accidental means, while this Policy is in force . . . all subject to the provisions and limitations herein contained."

Under "Exclusions", the policy provides:

"The insurance under this Policy shall not cover death, loss of limb or sight, or other loss caused directly or indirectly, wholly or partly, (1) by the intentional act of the Insured or any other person, whether sane or insane . . . ."

The plaintiff's evidence taken in the light most favorable to her tended to show that her husband had been engaged in his duties as a policeman in Farmville, North Carolina, on the morning of 10 November 1965 and that he was in uniform. A postal employee, Richard Barfield, in the post office across the street saw him searching Robert Rogers, who had his hands over his head, in front of the bus station. Barfield testified that the next thing he saw was Eason falling towards the ground after a shot or shots were fired. Rogers was at arm's length from Eason until he started running away.

Robert Rogers was called to testify, but offered little of substance, stating merely that he was arrested, tried, convicted and sent to prison for the killing of Eason. He had pleaded not guilty.

James Jones testified that he carried Rogers to Farmville about 6:20 on 10 November 1965 and left him at the bus station. J. C. Brock stated that when he reached Eason he was lying on his back beside a telephone booth. Earl Keel, also a police officer, added that Eason had on his person a .38 caliber pistol which had not been fired recently. He stated that he found a part of a bullet on the sidewalk near the body.

Dr. Gradis testified that he performed an autopsy on the decedent and, in his opinion, the bullet which had traveled into the chest on the left in the area of the armpit, down through the sixth rib and the vertebral column and into the muscles on the right of the spine, could have caused death. There were three other wounds on the body: inside the hand, on the back of the hand and on the abdomen. These three wounds, he hypothesized, were caused by one bullet, which he could not locate. Dr. Fitzgerald testified that he found Eason dead on the pavement just outside the bus station.

At the conclusion of the plaintiff's evidence, the defendant made a motion for nonsuit, which was allowed by the court. The plaintiff assigns as error the granting of this motion.

*Lewis and Rouse by John B. Lewis, Jr., for plaintiff appellant.*

*Allen, Steed & Pullen by Thomas W. Steed, Jr., and Arch T. Allen, III; and James, Speight, Watson & Brewer by W. H. Watson for defendant appellee.*

CAMPBELL, J.

[1, 2]   The evidence taken in the light most favorable to the plaintiff, *Price v. Tomrich Corp.,* 275 N.C. 385, 167 S.E. 2d 766 (1969), tends to show that the decedent, Eason, died of a gunshot wound suffered while he was on duty in his policeman's uniform and shortly after he had been seen searching Robert Rogers. The plaintiff must show that the loss sued upon falls within the terms of the coverage of the insurance policy in question. The insurer has the burden of showing, once coverage has been established, that the circumstances of the loss bring it within any exclusionary clauses. *Slaughter v. Insurance Co.,* 250 N.C. 265, 108 S.E. 2d 438 (1959). To withstand nonsuit, thus, the plaintiff must at least bring the loss within the coverage of the policy. *Henderson v. Indemnity Co.,* 268 N.C. 129, 150 S.E. 2d 17 (1966). See 46 N.C.L. Rev. 178.

[1, 3]   The language used in the instant policy, "injuries sustained . . . solely through external, violent and accidental means," has been interpreted to mean that the cause of the allegedly compensable event must be accidental in nature. *Henderson v. Indemnity Co., supra; Skillman v. Insurance Co.,* 258 N.C. 1, 127 S.E. 2d 789 (1962); *Slaughter v. Insurance Co., supra.* Although the lack of direct evidence that Rogers did indeed shoot Eason weakens the defendant's contention that Eason's death was the result of an intentional act and thus excluded from coverage, this same paucity of evidence will not allow us to say that it has been shown that Eason's death was caused by an accident. We hold that the evidence of the plaintiff herein does not establish that the shooting of Eason was solely a result of "accidental means." It follows that the nonsuit was properly allowed.

Affirmed.

PARKER and VAUGHN, JJ., concur.