**WACHOVIA BANK & TRUST COMPANY N.A., as Trustee and as Executor of the Estate of J. Bonner Sams, Jr., Plaintiff,**

v.

**AIG LIFE INSURANCE COMPANY and Hartford Accident and Indemnity Company, Defendants.**

**No. C–86–16–WS.**

United States District Court, M.D. North Carolina, Winston-Salem Division.

May 15, 1987.

Robert J. Lawing, Jane C. Jackson, Petree, Stockton & Robinson, Winston-Salem, N.C., for plaintiff.

F. Fincher Jarrell, Kennedy, Covington, Lobdell & Hickman, Charlotte, N.C., for Hartford Acc. & Indem. Co.

Thomas Ashe Lockhart, George K. Evans, Jr., Cansler & Lockhart, P.A., Charlotte, N.C., for AIG Life Ins. Co.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Chief Judge.

This matter comes before the Court on defendants' Motion for Summary Judgment (January 2, 1987). Plaintiff Wachovia Bank & Trust Co., as Trustee and as Executor of the Estate of J. Bonner Sams, Jr., brought this suit to recover accidental death benefits for the death of Bonner Sams (decedent) under policies of insurance issued by defendants AIG Life Insurance Co. and Hartford Accident And Indemnity Co. An essential element of plaintiff's case is that decedent's death was accidental. Finding that the undisputed facts do not support as a reasonable inference that decedent's death was accidental, the Court will grant defendants' motion.

After completion of discovery, counsel ably briefed the pending motion bringing into sharp focus the dispositive issue. Specifically, the parties do not disagree about the underlying material facts surrounding decedent's death. Instead, the parties differ regarding whether the underlying facts reasonably support an inference of accidental death. Thus, the Court will set out the underlying facts and then discuss them in light of the applicable law.

## FACTS

Decedent died in his bedroom on the morning of March 31, 1985, at approximately 7:50 a.m. The cause of death was a .32 caliber gunshot wound to the inside corner of his right eye. Responding to Mrs. Sams' emergency call, the police arrived soon after the shooting. The police found decedent where his wife saw him fall, on his back on the bedroom floor, with his shoulders on a folded bedcover and his head resting against a wall mirror. A revolver was in decedent's right hand which lay at his right side. He was found with his hand gripping the revolver; his fingers were around the handle and his thumb inside the trigger guard on the trigger. *See (Appendix* to Defendants' Motion for Summary Judgment filed Jan. 2, 1987, Part 2, at exhibits 2, 5, 14, 15, and 17). Additionally, the trigger was not in its at rest position but was depressed. *See (Id.,* Part 3(h), at 37–38 (uncontradicted testimony of Officer Wooten)). Gunshot residue was on the back of decedent's right thumb, and on the palm and between the fingers of his left hand. *(Id.,* Part 2). Small black marks caused by powder grains that burn the skin existed on decedent's right eyelid and on the bridge of his nose.

Prior to his death, decedent had a heated argument with his daughter and his wife. During the violent argument, decedent struck both his wife and his daughter. The daughter left the house, but the confrontation continued, decedent dragging his wife to the bedroom where he struck her repeatedly. Carol Sams, decedent's wife,

characterized the situation as the most extreme situation she had experienced with her husband except for one other occasion.

At one point, decedent knocked his wife to the floor where she sat with her head in a chair crying. Carol Sams knew that her husband kept a pistol in the bedside table. He had threatened her with it during prior similar episodes. She heard him go past her towards the bedside table; she did not look up. Then she heard a shot, she turned around and saw her husband falling to the floor. Upon realizing her husband was shot, Mrs. Sams summoned emergency help. When they arrived Mr. Sams was already dead. The Medical Examiner, Dr. Stringer, concluded that he died of a self-inflicted gunshot wound.

Regarding decedent's background, the Court notes that he was an employee of Wachovia Bank. He was financially secure, being successful in his job, and enjoyed the respect of his colleagues at Wachovia and others in his field. For many years Sams had difficulty controlling his temper. Family arguments were not unusual; decedent had struck both his wife and children and had previously threatened family members with the pistol which caused his death.[1] However, decedent had never threatened or attempted suicide. Mrs. Sams indicated that within the two years prior to her husband's death, she had never seen him depressed.

Plaintiff seeks accidental death benefits under policies issued by AIG Life Insurance Co. (AIG) and Hartford Accident and Indemnity Co. (Hartford). Both the AIG and Hartford policies provide for *accidental* death benefits and are not policies of general life insurance. *See* (Plaintiff's Brief In Opposition To Defendants' Motion For Summary Judgment filed February 11, 1987, at 1 and Appendix thereto, at part 2); (Brief In Support of Motion For Summary Judgment filed January 2, 1987, at 1 and Appendix thereto, at part 1). On this motion, the parties have raised no issues concerning plaintiff's claims under the policies other than whether decedent's death was accidental.

## DISCUSSION

As stated above, the general issue before the Court is whether upon defendants' motion, summary judgment is appropriate on plaintiff's claims for insurance benefits. The parties have made clear that the dispositive consideration is whether a genuine issue of material fact exists regarding whether decedent died as the result of suicide or accident.

The standard for summary judgment is determined by federal law. On a motion for summary judgment, the Court must view the record in the light most favorable to the nonmoving party. *See Smith v. University of North Carolina*, 632 F.2d 316, 338 (4th Cir.1980). Additionally, the inferences to be drawn from the record "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177 (1962); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2716, at 643 (2d ed. 1983).

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, "the moving party ... ha[s] the *burden* of *showing* the absence of a genuine issue as to any material fact ..." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142, 154 (1970) (emphasis added). *See also Thomas v. Petro-Wash*, 429 F.Supp. 808, 816 (M.D.N.C.1977) (noting that "the defendants must prove that the undisputed facts entitle them to summary judgment"). Yet, "the movant may discharge his burden by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for his opponent." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727, at 130 (2d ed. 1983).

---

1. For the purposes of this motion, the Court has taken as accurate plaintiff's evidence that one's tendency toward violence to others is not correlated to one's tendency toward violence to self.

The Supreme Court has recently noted that "the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. ——, ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273 (1986). In holding that the court of appeals misapplied the standard of Rule 56(c), the *Celotex* Court reasoned that "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of nonmoving party's case necessarily renders all other facts immaterial." *Id.* "[The] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986)).[2] A claimant must do more than show the *possibility* that an essential element of his claim exists but must support such an element to a *reasonable probability*. *See generally Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 239–40 (4th Cir.1980) (sufficiency of circumstantial evidence to support an inference of causation).

Subject matter jurisdiction in the instant case rests on diversity of citizenship. Therefore, under the familiar principles of *Erie*, North Carolina substantive law controls plaintiff's right of recovery. In order to make out a prima facie case for benefits under an accidental death insurance policy, a plaintiff must establish three elements as follows: (1) existence of the policy sued on, (2) death of the insured under conditions covered by the policy, and (3) notice to the insurer as required by the policy. *See Williams v. Pyramid Life Ins. Co.*, 2 N.C. App. 520, 522, 163 S.E.2d 400, 402 (1968); *Eason v. State Capital Life Ins. Co.*, 8 N.C.App. 293, 294, 174 S.E.2d 72, 74 (1970) (plaintiff must show that the loss sued upon falls within the terms of the coverage); 7 *Strong's North Carolina Index* § 66, at 438 (3d ed. 1977). Therefore, the burden of proof is on the plaintiff to show that the insured's death was accidental.[3] *See Moore v. Union Fidelity Life Ins. Co.*, 297 N.C. 375, 377, 255 S.E.2d 160, 162 (1979); *Barnes v. Insurance Co.*, 271 N.C. 217, 155 S.E.2d 492 (1967); *Henderson v. Hartford Accident Indemnity Co.*, 268 N.C. 129, 150 S.E.2d 17 (1966); 46 N.C.L. Rev. 178. *See generally Eason*, 8 N.C. App. at 294, 174 S.E.2d at 74.

North Carolina also recognizes a presumption of accidental death under certain circumstances which the plaintiff argues are present in the instant case. "When a plaintiff makes a showing of unexplained, violent death by external means, 'which is not wholly inconsistent with accident, the presumption arises that the means were accidental.'" *Moore*, 297 N.C. at 380, 255 S.E.2d at 165 (citing *Barnes*, 271 N.C. at 219, 155 S.E.2d at 494). Thus, for the presumption against suicide to arise the death *must* be, inter alia, *unexplained*.

Under the facts of the instant case, decedent's death is not unexplained. The circumstances leading to the fatal shooting of decedent are known. Contrasting the facts of the *Moore* case to the facts at bar demonstrates that the prerequisites for application of the presumption yield different results in the two cases. The *Moore* court found the death to be unexplained and the presumption applicable, although it stated: "this is a close question." *Moore*, 297 N.C. at 380, 255 S.E.2d at 165. In *Moore* the decedent left home one morning to arrange for an auction sale; his death apparently occurred that night. *Id.* at 377, 255 S.E.2d

**2.** Rule 50(a) mandates that the trial judge direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239, 243 (1943).

**3.** The burden of proof is cast differently with respect to a life insurance policy as opposed to an accidental death policy. A claimant under a life insurance policy need not show accidental death; the burden of proof is on the insurer to show the affirmative defense of suicide. *Adcock v. Life Assurance Co. of Carolina*, 31 N.C. App. 97, 228 S.E.2d 654 (1976); *Starkey Paint Co. v. Springfield Life Ins. Co.*, 24 N.C.App. 507, 211 S.E.2d 498 (1975).

at 162. His body was found the next morning lying in front of his car just off an unpaved road or path on a farm he owned. *Id.* The death resulted from a gunshot wound to the forehead, there were powder burns surrounding the wound. *Id.* A .32 caliber pistol was found at or near his right foot. *Id.* No signs existed that there had been a struggle or that anyone else had been around. *Id.* Decedent was proficient with firearms. *Id.*

In contrast, regarding the case at bar, it is known that no person other than decedent and his wife were in the house at the time of his death. Moments before Mrs. Sams heard the fatal shot, she heard her husband go to the bedside table where the gun was kept and open the drawer. She then heard a shot, turned and saw decedent fall to the floor. Immediately after his death, decedent was found holding the gun which killed him with his fingers around the handle and his thumb inside the trigger guard with the trigger still depressed by his thumb. Powder residue was on both hands and speckling existed around the wound. The facts of the instant case do not present an unexplained death, particularly in view of the fact that the *Moore* case indicated that it pushed the limits of a death being unexplained. Therefore, the presumption of accidental death is inapplicable to this case.[4]

Because accidental death is an essential element of plaintiff's case, the record must show that a genuine issue of fact exists on this point for plaintiff's claim to withstand defendants' motion for summary judgment. As is usual in this type of case, no *direct* evidence exists on decedent's intention or lack of intention to cause himself bodily harm. Therefore, for a genuine issue of fact to exist on accident, the circumstantial evidence must support accident as a reasonable inference. A claimant must do more than show the *possibility* that an essential element of his claim exists but must support such an element to a *reasonable probability. See generally Lovelace v. Sherwin-Williams Co.,* 681 F.2d 230, 239–40 (4th Cir.1980).

The undisputed physical facts surrounding decedent's death, particularly the position of his thumb on the trigger and hands on the gun, are circumstantial evidence which is inconsistent with accidental death. These undisputed facts do not render an accident impossible; however, an inference of accident would not be based on reason but based on speculation because the physical facts would not support it as a reasonable probability.

Plaintiff contends that other circumstantial evidence supports accident as a reasonable inference as follows: first, that on a prior occasion the decedent carelessly pointed the gun while loaded at his face; second, that decedent did not manifest any general or specific suicidal intent; third, that decedent generally loaded the revolver in such a manner that the trigger had to be pulled twice to fire and that (unbeknownst to decedent) his son, who handled the revolver several weeks prior to the shooting, *may* have inadvertently rotated the cylinder such that the trigger need only have been pulled once to fire; and fourth, that after decedent's death a police officer found the hammer of the revolver would not extend back to its normal cocked position although the trigger would operate to revolve the cylinder.[5] The Court believes that this additional evidence viewed in the light most favorable to plaintiff is insufficient to create a genuine issue of fact as to accident in the face of the *undisputed physical circumstances* of decedent's death. Upon the record, a conclusion of accident is not supportable as a reasonable

---

**4.** The Court also notes that once evidence of non-accidental death is adduced the presumption per se no longer applies. *Moore,* 297 N.C. at 380, 255 S.E.2d at 165.

**5.** Plaintiff also described a prior event of the gun firing inadvertently. However, the testimony of Carol Sams and her son make clear that the primary reason the gun fired was because the son had cocked it and then knowing nothing about revolvers gave it to Mrs. Sams asking her if she knew how to uncock the gun. Plaintiff characterizes decedent as inexperienced in handling guns; however, the undisputed evidence is that he took his son John and daughter Virginia target shooting and instructed at least John on the basics of operating a revolver.

inference but could only be the product of speculation. The principles of *Celotex* mandate summary judgment if a nonmoving party fails to support an essential element of its claim *upon which it will have the burden of proof* at trial; thus, defendants' motion will be granted.

Indeed as indicated in *Celotex*, once an element of plaintiff's claim is challenged by the movant and the movant carries his burden with respect thereto,[6] a motion for summary judgment is similar to a motion for a directed verdict. *See Celotex*, 477 U.S. at ——, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273–74. Upon the record of this case, the Court would be constrained to grant a motion for a directed verdict and even if the case were allowed to go to the jury and it returned a verdict for plaintiff, the Court's duty would be to grant a J.N. O.V., since such a verdict would be the result of speculation as to the element of accidental death.

The Court is sympathetic to the situation of the Sams family; however, it is duty bound to follow the admonition of the Fourth Circuit in *Gorham v. Mutual Ben. Health & Accident Ass'n of Omaha.* The *Gorham* court stated that a case such as this "should be tried like any other case.... If the evidence is conflicting or different inferences can reasonably be drawn from it, the case is for the jury. If, however, the evidence is so clear as to leave no room to doubt what the fact is, the question is one of law, and it is the right and duty of the judge to direct a verdict." 114 F.2d 97, 100 (4th Cir.1940). Upon the record in this case, the applicable law mandates summary judgment.

IT IS, THEREFORE, ORDERED that defendants' Motion for Summary Judgment be, and the same hereby is, GRANTED.

---

**6.** "The burden on the moving party may be discharged by 'showing'—that is pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at ——, 106 S.Ct. at 2554, 91 L.Ed.2d at 275.